UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DANA L. BROUSSARD                    CIVIL ACTION NO. 6:13-cv-2872

VERSUS                               JUDGE DOHERTY

LAFAYETTE CONSOLIDATED               MAGISTRATE JUDGE HANNA
GOVERNMENT, ET AL


## REPORT AND RECOMMENDATION


Currently pending before the Court are the defendants' motions to dismiss pursuant to Rule 12(b)(5) and 12(b)(6) and Alternatively for Summary Judgment. [Rec. Doc. 6-7], as well as a Motion for Sanctions. [Rec. Doc. 21]. The motions were referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C.§636 and the standing orders of this Court. The motions are opposed. Oral argument was heard on the motions to dismiss on May 27, 2014. For the following reasons, it is recommended that the motions to dismiss be granted in part and denied in part and that ruling on the remaining motions be deferred.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cpl. Dana L. Broussard seeks money damages for claims brought under 42 U.S.C. §§1983 and 1988, Title VII, and the First, Fourth, Fifth, and Fourteenth

Amendments to the United States Constitution.  Additional claims are made pursuant to Louisiana's equal employment and whistleblower provisions, and other state laws. [Rec. Doc. 1]. Named as defendants are Lafayette City-Parish Consolidated Government; Lafayette Police Department through the Lafayette City-Parish Consolidated Government; Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government; Dee Edward Stanley, individually and in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government; James P. "Jim" Craft, individually and in his capacity as Chief of the Lafayette Police Department; George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department; Captain Cornell Montgomery, individually and in his capacity as a Captain in the Lafayette Police Department; Major Terry Head, individually and in his capacity as a Major in the Lafayette Police Department; Lieutenant Richard "Ricky" Rees, individually and in his capacity as a Lieutenant in the Lafayette Police Department; Sergeant Mike Brown, individually and in his capacity as a Sergeant in the Lafayette Police Department; and, Ray Domingue, individually and in his capacity as Human Resources Manager of the Lafayette City-Parish Consolidated Government. [Rec. Doc. 1, pp. 1-9].

Broussard contends that on or about August 27, 2012, she filed a written complaint against Sgt. Mike Brown in which she alleged that Brown had violated the policies of the police department.  Broussard gave the report to her superior officer, Capt. Montgomery, who initially rejected the complaint and required that it be submitted on appropriate forms. Broussard complied.  Several days later, on or about August 31, 2012, Brown filed his own complaint against Broussard. [Rec. Doc. 1, pp. 10-11].   Both complaints were investigated and made the subjects of separate hearings.

Broussard's complaint against Brown was sustained in November, 2012, and Brown was disciplined as a result.  Broussard alleges that she was given a written commendation for raising the issues of Brown's misconduct on or about December 26, 2012 .  She also received a positive evaluation by Capt. Montgomery the same month. [Rec. Doc. 1, p. 11].  Broussard alleges that two days after receiving the commendation, she appeared for her own pre-disciplinary hearing where Brown's charges against her were also sustained.  Broussard was advised she would receive a letter of reprimand, which she did on February 7, 2013. [Rec. Doc. 1, pp. 11-12]. She appealed the reprimand decision.  The pleadings do not provide information on the outcome of the appeal.

Broussard alleges that immediately following her action to appeal, her work shift was changed to straight nights, which she considered to be a significant demotion from her daytime shift. [Rec. Doc. 1, p. 12]. Her request to speak to Maj. Terry Head about the issue was denied.   Her 'hardship' waiver letters were unsuccessful.

Broussard filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 9, 2013, after which she alleges she continued to be subjected to a hostile work environment, despite her continued complaints about her disparate treatment.  She received a right to sue notice from the EEOC on or about July 18, 2013. [Rec. Doc. 1, p. 15].

In general, Broussard contends that her prosecution for misconduct and her transfer and demotion were discriminatory and/or retaliatory acts undertaken in response to her complaint of "contumacious misconduct by Sgt. Brown" and invoking her appeal rights. [Rec. Doc. 1, pp. 13-14].  She alleges the shift transfer caused her great personal hardship relative to childcare, and it aggravated a health condition which had been in remission prior to the disciplinary events described. [Rec. Doc. 1, pp. 13-14]. She seeks to recover money damages resulting from the acts/omissions of the defendants in violation of state law, as well as the acts/omissions within the scope of the Charge of Discrimination filed with the EEOC and the acts/omissions

-4-

which violate §1983. [Rec. Doc. 1, pp. 15-16].  She also seeks to recover punitive damages and costs/attorney fees pursuant to the provisions of 42 U.S.C. §1988. In response, the defendants filed the instant Motions to Dismiss pursuant to Rule 12(b)(5) and 12(b)(6) and Alternatively for Summary Judgment. [Rec. Docs. 6, 7].[1]

A motion to dismiss under Rule 12(b)(5) turns on the legal sufficiency of service of process.  The defendants have objected to the validity of service on the individual defendants on the basis that it did not comply with the requirements of Fed.R.Civ.P. Rule 4(e).  Further, they assert that service was not timely under Rule 4(m), since service was not attempted for 127 days after suit-filing.  On the representations by the plaintiff's counsel that appropriate 'waiver of service' forms will be submitted as to each defendant except for Richard Rees,[2] and on representations by defense counsel that such waivers will be executed on receipt by/for those defendants, the Rule 12(b)(5) motions should be denied as moot.

In support of the Rule 12(b)(6) motion to dismiss, the defendants contend (1) that the plaintiff has failed to state any viable claim against Durel, Stanley, Domingue, Alfred,  Head, and Rees; (2) that the plaintiff has not stated a claim under

---

[1]Brown has separate counsel and has filed separate motions. The scope of the motions is essentially the same, with  Brown adopting the arguments advanced by the other defendants.

[2]The parties agreed that the now-deceased Richard Rees cannot be a proper party defendant in this action; no appearance has been made and no motion has been filed on his behalf.

§1983 for First Amendment violations; (3) that the plaintiff has not stated a claim under §1983 for Fourth Amendment violations; (4) that the plaintiff has not stated a claim under §1983 for Fifth Amendment violations; (5) that the plaintiff has not stated a due process claim under the Fourteenth Amendment; (6) that the plaintiff has not stated a claim under Title VII (42 U.S.C. §2000e) and La. R.S. 23:301 et seq; (7) that the plaintiff has failed to state whistleblower claims under La. R.S. 23:967 and 30:2027; (8) that the plaintiff has not stated a claim under La. Civil Code arts. 2315 and 2317; and (9) that the plaintiff has not stated a claim for punitive damages against the municipal defendant and its officials.

Finally, in a separate Motion for Sanctions [Rec. Doc. 21], the defendants call for the imposition of sanctions against Broussard and her attorneys for the presentation of claims with no factual or legal basis, despite  prior rulings from this Court in other, similar pending litigation imposing sanctions under Rule 11 for such conduct.[3]   A report and recommendation on the sanctions motion as well as the alternative motion for summary judgment on qualified immunity will be deferred pending a final disposition of the motions to dismiss by the district court. This Court has specifically and intentionally restricted its analysis to the complaint alone.

---

[3]See Marceaux et.al. v. Lafayette City-Parish Consolidated Government, et.al.,:12-cv-1532, Rec. Doc. 130, amended by Rec. Doc. 138.

### The Applicable Standard for a Rule 12(b)(6) Motion to Dismiss

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a district court must limit itself to the contents of the pleadings, including any attachments thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007).  A claim meets the test for facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic v. Twombly*, 550 U.S. at 556.  "[D]etermining whether a complaint states a plausible claim for relief will. . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*., at 679.

The "factual allegations must be enough to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action."*Bell Atlantic v. Twombly,* 550 U.S. at 555, quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004).   "While a complaint . . . does not need detailed factual allegations, a plaintiff's obligation to

-7-

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (Citations omitted).

"The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice. . . [The court] can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. at 678-79.  If the plaintiff fails to allege facts sufficient to "nudge[ ][his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 550 U.S. at 570.

Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009), quoting *Bell Atlantic v. Twombly*, 550 U.S. at 556; *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir. 2008).

## THE APPLICABLE SUBSTANTIVE LAW FOR SECTION 1983 CLAIMS

"Section 1983 confers no substantive rights, but merely provides a remedy for the violation [by a person acting under color of state law,] *of rights* secured under the Constitution and laws of the United States." *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008) quoting *Kirchberg v. Feenstra*, 708 F.2d 991, 1000 (5th Cir. 1983) (emphasis in original).  Therefore, an underlying constitutional or statutory violation is a predicate to any theory of liability under §1983. *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989).  The plaintiff must establish in a §1983 action that there has been:  (1) a violation of  rights secured by the Constitution or laws of the United States, (2) that was committed by a person acting under color of state law. *Southwestern Bell Telephone, LP v. City of Houston,* 529 F.3d at 260.

## THE CONSTITUTIONAL VIOLATIONS CLAIMED

### A. *FOURTH AMENDMENT*

The Fourth Amendment, which was made applicable to the States by the Fourteenth Amendment, states that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ."  A seizure of property occurs when "there is some meaningful

interference with an individual's possessory interests in that property." *Severance v. Patterson*, 566 F.3d 490, 501 (5th Cir. 2009), quoting *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *Soldal v. Cook County*, 506 U.S. 56, 61 (1992).   The defendants assert that the plaintiff has not alleged facts to show a meaningful deprivation or interference with her interest in her employment.   In response, the plaintiff argues that her "property" interest, which she was deprived of by the defendants' alleged retaliatory actions, is her salary and the vacation and/or leave time she was compelled to use as a result of her transfer to the night shift, constituting an effective reduction in salary. [Rec. Doc. 19, pp. 22-23].

In support of her position, the plaintiff has repeatedly cited the Seventh Circuit case of *Washington v. Illinois Dept. of Revenue*, 420 F.3d 658 (7th Cir. 2005), which was cited by the Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006) to find that a schedule change in an employee's work schedule could be considered an adverse employment action in the context of a Title VII retaliation claim.   However, neither case addresses claims brought under §1983, and the *Burlington Northern* holding is confined to Title VII's anti-retaliation provision. *Mitchell v. Snow*, 326 Fed. Appx. 852, 854-55 (5th Cir. 2009).   The Fifth Circuit has yet to extend the "materially adverse" standard of *Burlington Northern* to employment-related retaliation provisions brought for Constitutional violations.  See

-10-

*DePree v. Saunders*, 588 F.3d 282, 287–88 (5th Cir.2009) (quoting *Harrington v. Harris*, 118 F .3d 359, 365 (5th Cir.1997),  finding that in an education context, "[a]ctions such as decisions concerning teaching assignment, pay increases, administrative matters, and departmental procedures, while extremely important to the person who has dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation."  Accordingly, the Court finds that the plaintiff has failed to allege facts sufficient to state a legally cognizable §1983 claim, plausible on its face, predicated on a violation of the Fourth Amendment.

### B.   *FIFTH AMENDMENT DUE PROCESS*

With regard to the plaintiff's claim under §1983 predicated on a violation of Fifth Amendment rights, "[t]he Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without 'due process of law.'" *Dusenbery v. U.S.*, 534 U.S. 161, 167 (2002).  Since the Fifth Amendment proscribes deprivation of life, liberty, or property without due process of law by federal actors while the Fourteenth Amendment proscribes such action by state actors, the plaintiff's Fifth Amendment claim is presumably a reiteration of her contention that she was deprived of procedural due process under the Fourteenth Amendment.  There is, however, no dispute that all of the defendants are city employees and therefore state

actors.  The plaintiff has not alleged that any federal actor has deprived her of any rights.  For that reason, the plaintiff has failed to allege the facts necessary to support a Fifth Amendment due process claim.  The plaintiff concedes as much in brief. [Rec. Doc. 19, p. 24].  Accordingly, the Court finds that the plaintiff has not alleged a plausible §1983 claim based upon a violation of the Fifth Amendment.

## C.    *FOURTEENTH AMENDMENT*

The Fourteenth Amendment protects an individual's substantive due process, procedural due process, and equal protection rights.

### (1)    *Substantive Due Process*

Substantive due process bars arbitrary, wrongful government action regardless of the fairness of the procedures used to implement them.  *Lewis v. University of Texas*, 665 F.3d 625, 630-631 (5th Cir. 2011); *Marco Outdoor Advertising, Inc. v. Regional Transit Authority*, 489 F.3d 669, 673 n. 3 (5th Cir. 2007) (quoting *Zinermon v. Burch* 494 U.S. 113, 125 (1985)).  "To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that she had a property interest/right in her employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Id.,* (quoting *Moulton v. Cty. of Beaumont*, 991 F.2d 227, 230 (5th Cir. 1993)). A property interest in continued employment is determined by contract, policy, state or local law. *Bolton*

*v. City of Dallas, Tex.*, 472 F.3d 261, 263 (5th Cir. 2006); *Lollar v. Baker*, 196 F.3d 603, 607 (5th Cir. 1999); *Cabrol v. Town of Youngsville*, 106 F.3d 101, 105 (5th Cir. 1997).

While the plaintiff may have a protected property interest in her continued employment, she does not have a protected property interest in a particular shift or particular job responsibilities.  The due process clause does not protect a public employee's specific job duties and responsibilities absent a statute, rule or express agreement reflecting an understanding that she had such a unique property interest in those duties/responsibilities. *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010); *DePree  v. Saunders,* 588 F.3d 282, 289–90 (5th Cir.2009); *Kelleher v. Flawn,* 761 F.2d 1079, 1087 (5th Cir.1985) (rejecting a public employee's claim of entitlement to specific duties, where neither state law nor the employee's contract supplied a basis for a claim of entitlement to those duties). "Absent a property interest, there is nothing subject to due process protections and our inquiry ends." *Cabrol v. Town of Youngsville,* 106 F.3d at 105.

The plaintiff has failed to make any factual allegations in the complaint that would indicate she has a basis for a claim of entitlement to a specific shift or duties as a corporal in the Lafayette Police Department. Nor has the plaintiff pointed this Court to any state law, policy or custom that would supply a basis of

entitlement to those duties. Therefore, the Court finds the plaintiff has not alleged a plausible §1983 claim based on a substantive due process violation under the Fourteenth Amendment.

### (2)   *Procedural Due Process*

"To state a § 1983 claim based on termination of employment without affording procedural due process, [the plaintiff] must allege that (1) she has a property interest in her employment sufficient to entitle her to due process protection, and (2) she was terminated without receiving the due process protections to which she was entitled." *Lebeouf v. Manning* 2014 WL 3454570, *2 (5th Cir. 2014) citing *McDonald v. City of Corinth, Tex.*, 102 F.3d 152, 155–56 (5th Cir.1996).  The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner.  *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *Crowe v. Smith,* 151 F.3d 217, 230-31 (5th Cir. 1998).

The Lafayette Municipal Fire and Police Civil Service Board is empowered under La. Const. Art. X, § 12(B) to exclusively "hear and decide all removal and disciplinary cases" involving public officials and employees. The decisions of the board are subject to judicial review by the court of appeal where the commission is located.  There are no allegations the process employed by this body is inadequate or otherwise unconstitutional under the Fourteenth Amendment.  The plaintiff

-14-

confirms in the complaint that she availed herself of appeal procedures, although she does not provide detail on the process or the outcome.  She makes only the conclusory assertion that the procedures were not meaningful offering, no other detail. Such conclusory statements are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 556 U.S. at 678-79.  In the absence of any factual allegations, the Court finds that the plaintiff has not stated a plausible §1983 claim based on a violation of procedural due process under the Fourteenth Amendment.

### (3)   *Equal Protection*

The Equal Protection Clause of the Fourteenth Amendment requires that persons similarly situated be treated the same way. *Dudley v. Angel*, 209 F.3d 460, 463 (5th Cir. 2000). " To state a claim under the Equal Protection Clause, a §1983 plaintiff must allege that a state actor intentionally discriminated against her because of her membership in a protected class." *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999) (quoting *Johnson v. Morel,* 876 F.2d 477, 479 (5th Cir. 1989); *Washington v. Davis*, 426 U.S. 229, 247–48 (1976).  There are multiple references in the complaint to alleged gross and malicious acts of discrimination and retaliatory conduct  "undertaken in response to Plaintiff invoking her appeal rights following the unjust charges which were sustained against her." [Rec. Doc. 1, ¶37].  She has also alleged that the defendants acted "in retaliation against

Plaintiff for reporting known misconduct of a fellow law enforcement officer."

[Rec. Doc. 1, ¶53].  However,  as a matter of law,  no *retaliation* claim may be

brought under §1983 based on the Equal Protection Clause. *Burnheim v. Litt,* 79

F.3d 318, 323 (2nd Cir.1996); *Ratliff v. DeKalb County,* 62 F.3d. 338, 340-341

(11th Cir.1995) (no clearly recognized right to be free from retaliation exists under

the Equal Protection Clause); *Gray v. Lacke,* 885 F.2d 399, 414, (2nd Cir.1989),

*cert. denied,* 494 U.S. 1029 (1990); *Gates v. The City of Dallas,* 1998 WL 401602

*5 (N. D.Tex .1998); *Cordova v. City of Mansfield*, 2006 WL 2513923 *7 (W.D.

La. Aug. 29, 2006).   Therefore, the Court must focus its analysis on whether the

plaintiff has alleged a plausible violation of the Equal Protection Clause based on

*discrimination*.

When an employment discrimination claim is brought under §1983, the

evidentiary framework used in Title VII cases to determine whether the defendant

intentionally discriminated against the plaintiff is utilized. *Lawrence v. Univ. of

Texas Medical Branch at Galveston*, 163 F.3d 309, 311 (5th Cir. 1999).  Intentional

discrimination can be established through direct or circumstantial evidence.

*Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007); *Wallace v.

Methodist Hospital System*, 271 F.3d 212, 219 (5th Cir. 2001).  Therefore, a

plaintiff must either produce direct evidence of intentional discrimination or

satisfy the three steps of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). which together make out a circumstantial case for intentional discrimination.

Under *McDonnell Douglas*, an employee must first make out a *prima facie* case of discrimination by showing that:  (1) she is a member of a protected class, (2) she was qualified for her position, (3) she suffered an adverse employment action, and (4) she was replaced by someone outside the protected class or, in cases alleging disparate treatment, that others similarly situated were treated more favorably. *Alvarado v. Texas Rangers*, 492 F.3d at 611; *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 941 (5th Cir. 2005); *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512-13 (5th Cir. 2001).  If the employee satisfies those four criteria, successfully establishing a *prima facie* case of discrimination, a presumption of intentional discrimination arises, and the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Alvarado v. Texas Rangers*, 492 F.3d at 611.

Although Broussard has made conclusory statements concerning alleged disparate treatment, she alleges no factual details of the alleged treatment or identification of other similarly-situated individuals treated more favorably. [Rec.

-17-

Doc. 1, ¶46, 51].  Nowhere in the complaint does Broussard describe her membership in a protected class as a causative/triggering factor.  Despite her reference to the filing of an EEOC Charge of Discrimination, Broussard has provided no detail regarding that charge or the protected class status she claimed.  Since a plaintiff must allege, as a threshold matter, that she is a member of a protected class to state an equal protection claim, and the plaintiff has made no such factual allegation, nor has she alleged any facts to support element four of the cause of action, she has not alleged a *prima facie* case of discrimination.

Accordingly, this Court concludes that the plaintiff has failed to allege a plausible §1983 claim based on a violation of the Equal Protection Clause of the Fourteenth Amendment.

## D.   *FIRST AMENDMENT FREE SPEECH*

Broussard contends that the defendants violated her First Amendment right to free speech by retaliating against her with adverse employment actions because she reported the misconduct of Brown and appealed the disciplinary action taken against her. To establish such a claim, a plaintiff must prove the following elements:  (1) that she suffered an adverse employment decision, (2) that her speech involved a matter of public concern, (3) that her interest in speaking

outweighed the governmental defendant's interest in promoting efficiency, and (4) that the protected speech motivated the defendant's conduct. *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011); *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc). Adverse employment actions in this context include "discharges, demotions, refusals to hire, refusals to promote and reprimands." *Id.,* (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).

Although not all duty transfers are adverse employment actions, transfers that involve significant deprivation may be adverse employment actions. *Serna v. City of San Antonio*, 244 F.3d 479, 482-83 (5th Cir. 2001). A transfer may be equivalent to a demotion and consequently an adverse employment action even without resulting in a decrease in pay, title, or grade if the new position proves to be objectively worse than the prior position, such as being less prestigious, less interesting, or providing less room for advancement.  *Porter v. Valdez*, 424 Fed. App'x 382, 387 (5th Cir. 2011); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999).

With regard to the second element, the Court must engage in a two-step evaluation, first determining whether the plaintiff was speaking as a citizen rather than as an employee and next whether the speech was on a topic of public concern. *Davis v. McKinney*, 518 F.3d 304, 311-12 (5th Cir. 2008).  The determination of

whether a public employee's speech addresses a matter of public concern is not a factual issue; it is a question of law to be decided by the court. *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991).  Statements addressing official misconduct, and testimony in judicial proceedings are matters of public concern. *Charles v. Grief* 522 F.3d 508, 514 (5th Cir. 2008); *Kinney v. Weaver*, 367 F.3d at 367.

> The disclosure of misbehavior by public officials is a matter of public interest and therefore deserves constitutional protection, especially when it concerns the operation of a police department. Because the speech at issue complained of misconduct within the police department, it should be classified as speech addressing a matter of public concern. *Brawner v. City of Richardson*, 855 F.2d 187, 191-92 (5th Cir. 1988) (Footnotes omitted).

In this case, Broussard allegedly complained of police department policy violations by her co-employee.  This would qualify as protected speech under the First Amendment. After she reported the misconduct of Brown at the behest of her supervisor, and once her identity as the source of that report was given to Brown, she became the subject of a complaint by Brown which led to the disciplinary proceedings and official reprimand. When she appealed the reprimand decision, also protected speech, she received a transfer to straight night shifts which she alleges caused her actual physical distress. Although the plaintiff alleges she was commended for her report about Brown and received "good marks" in a performance evaluation by her superior officer, she sufficiently alleges both of the

actions, the reprimand and transfer, were done as acts of retaliation linked to the initial report of misconduct. At this stage of this litigation, the plaintiffs' allegations must be taken as true.

Accordingly, the Court finds that the facts alleged by the plaintiff are sufficient to state a plausible §1983 claim predicated upon an alleged violation of her First Amendment rights.  Having concluded that the plaintiff has alleged a plausible First Amendment violation, the next analysis focuses on whether the factual allegations in the complaint plausibly demonstrate that the violation was committed by a "person" acting under color of law.

### SECTION 1983 LIABILITY FOR MUNICIPALITIES AND INDIVIDUALS ACTING IN THEIR OFFICIAL CAPACITIES.

The plaintiff  has  asserted official capacity claims against Lafayette City-Parish president Joey Durel, Lafayette City-Parish Chief Administrative Officer Dee Stanley, the City's human resources manager Ray Domingue, Lafayette police Chief Jim Craft, and police officers George "Jackie" Alfred, Terry Head, Cornell Montgomery , Richard "Ricky" Rees,  and Mike Brown . [Rec. Doc. 1, ¶¶ 1, 7]. The plaintiff has also sued the Lafayette City-Parish Consolidated Government

and the Lafayette Police Department through the Lafayette City-Parish

Consolidated Government.[4]

 "A judgment in a §1983 lawsuit against an official in his official capacity

imposes liability against the entity he represents." *Deshotels v. Village of Pine*

*Prairie*, No. 11-CV-2052, 2012 WL 1712358, at *4 (W.D. La. Apr. 13, 2012).

Therefore, it is "well settled that a suit against a municipal official in his or her

official capacity is simply another way of alleging municipal liability." *Howell v.*

*Town of Ball*, No. 12-951, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012),

citing *Monell v. New York City Department of Social Services*, 436 U.S. 658

(1978). When, as in this case, the government entity itself is a defendant in the

litigation, claims against specific individuals in their official capacities are

redundant, and for that reason, courts in this circuit have found it is appropriate to

dismiss them. *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) *Flores*

*v. Cameron County, Tex.*, 92 F.3d 258, 261(5th Cir. 1996).

---

[4] In the Complaint, the plaintiff lists "Lafayette Police Department through the Lafayette City-Parish Consolidated Government" as a separate defendant.  The Lafayette Police Department is an agency or department of the City that does not function independently.  Therefore, after review of the Home Rule Charter, it has been specifically held in this division of this district that neither the Lafayette Police Department nor the Lafayette City Chief of Police  have the legal capacity to be sued.  *Domingue v. Lafayette City Parish Consolidated Government,* No. 05-2151, 2008 WL 728654, at *5 n. 13 (W.D. La. Mar. 17, 2008). See also *Cormier v. Lafayette City Parish Consol. Government*, No. 6:09-cv-0703, 2011 WL 5156862, at *3 (W.D. La. Oct. 28, 2011), rev'd on other grounds, No. 11-31125, 2012 WL 4842272 (5th Cir. Oct. 12, 2012); *Batiste v. Bonin*, No. 06-1352, 2007 WL 1791219, at *4 (W.D. La. June 13, 2007).

In keeping with this principle, the Court finds that the plaintiffs' §1983 claims against the individual defendants in their official capacities are redundant of the claims asserted against the City-Parish Consolidated Government,  and that the Lafayette City Police Department does not have the capacity to be sued under §1983. Accordingly, the Court recommends that the plaintiff's claims against Joey Durel, Dee Stanley, Ray Domingue, Jim Craft, Jackie Alfred, Cornell Montgomery, Terry Head, Richard Rees, and Mike Brown, in their official capacities, be dismissed.  The Court also recommends that the §1983 claims against the Lafayette City Police Department be dismissed, leaving for determination whether a plausible claim has been asserted against the municipal entity - the Lafayette City-Parish Consolidated Government.

"Although municipalities are not vicariously liable for violations committed by their employees, they are liable whenever 'their official policies cause their employees to violate another person's constitutional rights,' and for actions taken by an official with 'final policymaking authority' in that area." *Jones v. Lowndes County, Miss.*, 678 F.3d 344, 349 (5th Cir. 2012) quoting *City of St. Louis v. Praprotnik* 485 U.S. 112, 122 (1988).   Whether that official has that authority is determined by state law. *Id.,* citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986).  "The alleged deprivation must be connected to 'a governmental

custom,' 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by the body's officers.'" *Id.,* quoting *Monell v. New York Department of Social Services,* 436 U.S. 658, 690-91 (1978).

Therefore, "a claim of municipal liability under §1983 'requires proof of three elements:  a policymaker, an official policy, and a violation of constitutional rights whose moving force is the policy or custom.'" *Doe ex rel. Magee v. Covington County School Dist. ex rel. Keys*, 675 F.3d 849, 866-67 (5th Cir. 2012) (en banc), quoting *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001).  If a municipal policy itself is unconstitutional or violates federal law municipal liability will attach, as such a policy constitutes a "moving force."  *Id.,* see also *Bishop v. Arcuri*, 674 F.3d 456, 467 (5th Cir. 2012) citing *Board of County Commissioners v. Brown,* 520 U.S. 397, 402-05 (1997).  However, a city's official policies may also include any "persistent, widespread practice of city officials or employees, which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy." *Id.,* quoting *Bennett v. City of Slidell,* 735 F.2d 861, 862 (5th Cir 1984) (en banc).

A municipality may also incur §1983 liability for its non-policy-making employees' acts when a municipal policy of hiring or training causes those acts.

-24-

*Benavides v. County of Wilson*, 955 F.2d 968, 972 (5ᵗʰ Cir. 1992); *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 170 (5ᵗʰ Cir. 2010).  When such a claim is asserted, the plaintiff  "must show that (1) the training or hiring procedures of the municipality's policymaker were inadequate; (2) the municipality's policymaker was deliberately indifferent in adopting the hiring or training policy; and (3)  the inadequate hiring or training policy directly caused the plaintiff's injury." *Benavides v. County of Wilson*, 955 F.2d at 972 citing *City of Canton v. Harris,* 489 U.S. 378 (1205-070 (1989); *Zarnow v. City of Wichita Falls, Tx.* 614 F.3d at 170.

> A municipality acts with "deliberate indifference" if
>
> in light of the duties assigned to specific officers or employees, the need for more or different training is so obvious, and the inadequacy so likely to result in violations of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.

*Benavides v. County of Wilson*, 955 F.2d at 972 (citations omitted).

Broussard has made a number of conclusory statements to which no assumption of truth should be attached. However, Broussard has identified alleged policymakers, and she has identified what she alleges to be a practice of unauthorized dissemination of her identity as the source of a complaint of police

misconduct, which eventually led to her reprimand/transfer. While Broussard may not ultimately prevail, this Court concludes Broussard has alleged enough factual content to "nudge" her §1983 claims against the Lafayette City-Parish Consolidated Government across the line from conceivable to plausible.

Broussard has also alleged that the City-Parish Government failed to adequately train some of the officers. This statement is conclusory and  she has not identified any facts identifying any inadequate hiring or training policy to which the municipality was deliberately indifferent in adopting. Therefore, this Court concludes the plaintiff has failed to state a plausible §1983 claim against the Lafayette City-Parish Consolidated Government based on a failure to adequately train.

### *LIABILITY AGAINST PERSONS ACTING IN THIER  INDIVIDUAL CAPACITY*

In order to assert a valid claim against an official in his individual capacity, "[a] §1983 claimant must 'establish that the defendant was either personally involved in a constitutional deprivation or that his wrongful actions were causally connected to the constitutional deprivation.'" *Jones v. Lowndes County, Miss*., 678 F.3d at 349 quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).  "Under section 1983, supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability." *Thompson v. Upshur County*,

245 F.3d 447, 459 (5th Cir. 2001).  "A supervisory official may be held liable . . .
only if (1) he affirmatively participates in the acts that cause the constitutional
deprivation, or (2) he implements unconstitutional policies that causally result in
the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011),
quoting *Gates v. Texas Department of Prot. & Reg. Servs*., 537 F.3d 404, 435 (5th
Cir. 2008).  To establish supervisor liability for constitutional violations
committed by subordinate employees, the plaintiff must show that the supervisor
acted or failed to act with deliberate indifference to the violation of others'
constitutional rights committed by their subordinates. *Porter v. Epps*, 659 F.3d at
446; *Gates v. Texas*, 537 F.3d at 435.  Deliberate indifference requires "proof that
a municipal actor disregarded a known or obvious consequence of his action."
*Porter v. Epps,* 659 F.3d at 447, quoting *Connick v. Thompson,* 131 S.Ct. 1350,
1360 (2011).

### (1) Mayor Joey Durel

It does not appear that the plaintiff has brought a claim against Mayor Durel
in his individual capacity, as it appears the limited allegations against Mayor Durel
are made in "his official capacity." [Rec. Doc. 1, ¶¶1, 7(B)].   To the extent that is
not accurate, there are no factual allegations which would support an individual

capacity claim against him, accordingly, the Court recommends that all of the plaintiffs' §1983 claims against Mayor Durel be dismissed.

### (2) Dee Stanley

Dee Stanley is identified as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government.  Broussard alleges that Stanley has been expressly, implicitly, or otherwise assigned, ascribed, delegated, and/or otherwise conferred whole or partial direction and supervision of the administration of all departments, offices and agencies of the City-Parish Government. [Rec. Doc.1, ¶¶1, 7(C)].  Other than that, there are no factual allegations of actions or omissions by Stanley personally that are related to the claims made by the plaintiff to which liability under §1983 in an individual capacity would attach.  There are no facts supporting a conclusion that Stanley actually played a part in formulating, applying, or enforcing a police department policy or custom or punishment which caused harm to the plaintiff. Finally, although Broussard has alleged that other defendants are vicariously liable for the acts/omissions of Stanley and others, there are no acts or omissions by Stanley of whatsoever kind described in the complaint.

Therefore, this Court finds that the plaintiff has failed to state a plausible § 1983 claim against Dee Stanley and that all the claims against him be dismissed.

### (3) Ray Domingue

Ray Domingue is the City's Human Resources Manager.  Except for identifying Domingue by title and alleging that he has whole or partial direction/supervision of the administration of all departments of the city-parish government, there are no other allegations against  Domingue in the complaint. [Rec. Doc. 1, ¶¶1, 7(J)].  There are no allegations of interactions between the plaintiff and Domingue and there are no allegations that Domingue did or failed to do anything which adversely affected the plaintiff.  Likewise, there are no facts supporting a conclusion that Domingue actually played a part in formulating, applying, or enforcing a police department policy or custom or punishment which caused harm to the plaintiff.

Accordingly, the Court recommends that all the plaintiffs' §1983 claims against Ray Domingue be dismissed.

### (4)    *Police Chief Jim Craft*

Chief Jim Craft is alleged to have been the Chief of the Lafayette Police Department, the highest ranking officer in the department.  He is alleged to be the "progenitor" of police department policy. [Rec. Doc. 1, ¶¶1, 7(D)].  The plaintiff alleged that in December, 2012, Chief Craft drafted and signed a letter commending her efforts to report the misconduct of her fellow officer Sgt. Brown.

He also endorsed the plaintiff's positive performance evaluation "giving great marks." [Rec. Doc. 1, ¶¶21-22].

Chief Craft also signed the letter of reprimand which resulted from the plaintiff's disciplinary hearing in January, 2013. [Rec. Doc. 1, ¶28].  The plaintiff alleges that the subsequent punitive and disparate treatment described in the complaint was ordered by  Chief Craft. [Rec. Doc. 1, ¶46].  She alleges that Chief Craft and others "knowingly and intentionally transferred and demoted Plaintiff to an inconvenient, deleterious, dangerous and ultimately hostile workplace environment in retaliation for her complaint of contumacious misconduct by Sgt. Brown." [Rec. Doc. 1, ¶48].

These factual allegations, which must be accepted as true at this stage, are sufficient to conclude that at least some of the plaintiff's individual claims against Chief Craft withstand the defendants' challenge to the plaintiff's complaint. Accordingly, the Court recommends that the defendants' motions to dismiss be denied to the extent they seek dismissal of claims against Chief Craft in his individual capacity.

### (5)    George "Jackie" Alfred

Alfred is alleged to have been the Patrol Division Commander of the Lafayette Police Department at the times referenced in the complaint.  Except for

his identification as a defendant in the complaint, the only factual allegation which

mentions Alfred appears in the statement that he received information regarding

the plaintiff's complaint about  Brown from her superior Capt. Montgomery. [Rec.

Doc. 1, ¶14]. There are no allegations that Alfred did or failed to do anything

which caused the plaintiff harm of whatsoever kind.  The other  conclusory

allegations that Alfred (among others) was not properly trained, supervised,

managed, disciplined or retained [Rec. Doc. 1, ¶60] are not factually supported in

the complaint. Therefore, the Court  recommends all §1983 claims against Alfred

be dismissed.

### (6)   *Cornell Montgomery*

The plaintiff alleges that Montgomery holds the rank of captain within the

Lafayette Police Department, and he was a direct superior officer of the plaintiff.

Montgomery is alleged to have heard the plaintiff's concerns about Brown, and he

disclosed that information to Commander Alfred. [Rec. Doc. 1, ¶¶ 12-14]. He

instructed the plaintiff to conform her complaint to writing on official police

department forms, which she did. [Rec. Doc. 1, ¶¶15-17].  The plaintiff alleges

that Montgomery violated Lafayette Police Department policies and procedures by

notifying Brown of her complaint and identifying her as the complainant, causing

Brown to lodge a counter-complaint against her. [Rec. Doc. 1, ¶¶18-19, 25].

Montgomery  performed an evaluation of the plaintiff's work in December, 2012, giving her good marks. [Rec. Doc. 1, ¶22].   Subsequently, Montgomery is alleged to have delayed in giving the plaintiff the  letter of reprimand issued following her disciplinary proceeding. [Rec. Doc. 1, ¶28].  He is also alleged to have directly ordered her transfer from her regular daytime shift to a night shift, which she considered a demotion. [Rec. Doc. 1, ¶¶31-32].  The plaintiff has alleged that the reasons given by Montgomery for the shift change were false. [Rec. Doc. 1, ¶33, 35].

Given these allegations, the Court concludes that the plaintiff has made sufficient factual allegations  to state a cause of action against Montgomery in his individual capacity under § 1983 and recommends that the motion to dismiss be denied as to Montgomery.

### (7)    *Terry Head*

Terry Head is identified as a major in the Lafayette Police Department. Broussard alleged that in December, 2012, Major Head signed her evaluation which gave her "great marks." [Rec. Doc. 1, ¶22].  She has alleged that Head and Montgomery were tardy in delivering the reprimand letter to her following her disciplinary proceeding, the receipt of which triggered her decision to invoke her appeal rights. [Rec. Doc. 1, ¶28-29].  After her transfer to the night shift, the

-32-

plaintiff requested to speak to Major Head regarding the transfer, but she has alleged her request was denied.  [Rec. Doc. 1, ¶34].

None of these factual allegations support a claim for liability in an individual capacity under §1983 based on the alleged First Amendment violation. Therefore, the Court recommends all §1983 claims against Major Head be dismissed.

### (8)   Richard "Ricky" Rees

Although Rees (now deceased) is not a proper party defendant, this Court finds the allegations against him are frivolous. Rees is identified to have been a lieutenant in the Lafayette Police Department. [ [Rec. Doc. 1, ¶1, 7(H)]. Broussard alleges she was orally advised by Rees immediately following her January 9, 2013 pre-disciplinary hearing that she would be receiving a letter of reprimand relative to the charges sustained at the hearing. [Rec. Doc. 1, ¶¶26-27]. Immediately following the plaintiff's appeal of that disciplinary action, she was contacted by Rees, who informed her that her shift would be transferred from days to nights "at the direct order of Defendant Montgomery." [Rec. Doc. 1, ¶31]. After her transfer, the plaintiff obtained access to her personnel file from Rees. [Rec. Doc. 1, ¶35.  On this record, all that can be inferred is that Lt. Rees served

as a messenger and liason between the plaintiff and persons above them both in the chain of command.

### (9)   Mike Brown

Brown held the rank of sergeant within the police department.  While he may have outranked the plaintiff (a corporal), there is no indication in the complaint that he supervised or directed her work, and the plaintiff refers to Brown in the complaint as "her fellow law enforcement officer." [Rec. Doc. 1, ¶¶10, 13].  After Broussard lodged the complaint against Brown, which was sustained, Brown filed his own complaint against Broussard alleging that she had engaged in an unauthorized investigation.  Broussard alleges that charge is "patently false" and vindictive. [Rec. Doc. 1, ¶19, 25].

The accusations of Brown, even if false, do not constitute an adverse employment action under § 1983. *Breaux v. City of Garland*, 205 F.3d 150, 157-58 (5th Cir. 2000). There are no allegations that Brown did, or had the authority to reprimand or transfer Broussard. However, the allegation that Brown's false complaint against Broussard led to her reprimand cannot exclude the possibility that Brown's "wrongful actions were causally connected to the constitutional deprivation.'" *Jones v. Lowndes County, Miss.*, 678 F.3d at 349 quoting *James v. Texas Collin County*, 535 F.3d 365, 373 (5th Cir. 2008).

Accordingly, this Court concludes that Brown's motion to dismiss the §

1983 claim be denied.

### CONCLUSION AND RECOMMENDATIONS AS TO SECTION 1983 CLAIMS

Based on the allegations contained in the complaint, this Court concludes

that the plaintiff has failed to allege a claim upon which relief can be granted

against any defendant based on alleged violations of the Fourth, Fifth, or

Fourteenth Amendments. The plaintiff has alleged sufficient facts to predicate a

claim under §1983 based on a First Amendment violation.  Having reached that

conclusion this Court makes the following recommendations:

(1)    Since the plaintiff's claims under §1983 against the defendants Durel,

Stanley, Craft, Domingue, Alfred, Montgomery, Head, Rees and Brown, in their

*official* capacities are redundant inasmuch as the Lafayette City-Parish

Consolidated Government is a named defendant and the Lafayette City Police

Department lacks the legal capacity to be sued, the Court recommends all of the

the defendants' motions to dismiss these claims against these defendants be

granted.

(2)    Since this Court concludes that the plaintiff has failed to state a cause

of action for which relief can be granted under §1983 against Defendants Durel,

Stanley, Alfred, Head, Rees, and Domingue in their individual capacities, the Court recommends the defendants' motion to dismiss the §1983 claims against these defendants in their individual capacities be granted.

(3)     Since this Court concludes that at least some of the plaintiff's allegations have stated a cause of action for which relief can be granted under §1983 against the Lafayette City-Parish Consolidated Government, and against defendants Craft, Brown and Montgomery in their individual capacities, the Court recommends that Brown's motion to dismiss the §1983 claim against him in his individual capacity be denied. The Court also recommends that the remaining defendants' motion to dismiss be denied.

## THE TITLE VII CLAIMS

Title VII (42 U.S.C. §2000e) makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions, or privileges of employment because of her race, color, religion, sex, or national origin. 42 U.S.C. §2000e-2(a).  Title VII's anti-retaliation provision forbids discrimination against an employee or job applicant who, has "opposed any practice" made unlawful by Title VII or "made a charge, testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. §2000e-3(a).

-36-

The Supreme Court has addressed the distinction in the provisions in *Burlington*

*Northern & Santa Fe Railway Co. v.  White*, 548 U.S. 53 (2006):

> The anti-discrimination provision seeks a workplace where
> individuals are not discriminated against because of their racial,
> ethnic, religious, or gender-based status.  See *McDonnell Douglas
> Corp. v. Green*, 411 U.S. 792, 800-801, 93 S.Ct. 1817, 36 L.Ed.2d
> 668(1973).  The anti-retaliation provision seeks to secure that primary
> objective by preventing an employer from interfering (through
> retaliation) with an employee's efforts to secure or advance
> enforcement of the Act's basic guarantees.  The substantive provision
> seeks to prevent injury to individuals based on who they are, *i.e.*, their
> status.  The anti-retaliation provision seeks to prevent harm to
> individuals based on what they do, *i.e.*, their conduct.

*Burlington v. White*, 548 U.S. at 63.

In the instant case, the Court cannot glean from the complaint what alleged

discrimination formed the basis for Broussard's charge of discrimination filed with

the EEOC in March, 2013.  No details are provided regarding the protected class

status claimed by her or the Title VII-protected activity which may have been

referenced in the charge.  Broussard has not alleged in the complaint that her

disciplinary procedure following  Brown's complaint constituted a Title VII

violation, and she has not alleged that her shift change/demotion, or the alleged

hostile environment referenced, but not described in the complaint, or the

disparate treatment mentioned, but not factual described, were linked to a class

status protected by Title VII.  The bare allegation that a charge of discrimination

was filed is insufficient to state a claim under Title VII, since it fails to establish

the elements required by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800-

801(1973), as discussed above.  The Court concludes that the complaint fails to

state a claim of discrimination under the substantive provision of Title VII.  The

plaintiff has not alleged the elements critical to such a claim, thereby failing to

present a *prima facie* case of discrimination, as discussed above relative to the

equal protection claims.

   To establish a separate *prima facie* case of unlawful retaliation under Title

VII, the plaintiff must show: 1) that she engaged in an activity protected by Title

VII; 2) that an adverse employment action occurred; and 3) that a causal link

existed between the protected activity and the adverse employment action.

*Washburn v. Harvey,* 504 F.3d 505, 510 (5th Cir.2007); *Long v. Eastfield College,*

88 F.3d 300, 304 (5th Cir.1996).

   As to the first prong, the pleadings confirm that Broussard filed a charge of

discrimination with the EEOC on March 9, 2013.  Thus, she engaged in an activity

protected by Title VII.  As to the second prong, Broussard was transferred from a

desirable day shift to an undesirable night shift.  Even if the Court accepted that an

adverse employment action occurred, applying the broader *Burlington* standard[5]
cited by the plaintiff, the shift change occurred *prior* to the protected activity, and
only employment actions occurring after the protected activity can be implicated
by the retaliation provision of Title VII. Therefore, no causal link can be shown
between Broussard's filing of charges with the EEOC and her alleged
demotion/transfer. See *Stevenson v. Williamson*, 547 F. Supp. 2d 544, 555 (M.D.
La. 2008) aff'd, 324 F. Appx. 422 (5th Cir. 2009).

Except for the conclusory allegations that she "continued to be subjected to
a hostile work environment after filing this EEOC complaint," which is not
entitled to the assumption of truth, Broussard has offered no factual allegations or
details that the alleged continued adverse action by her employer resulted from the
filing of that charge. [Rec. Doc. 1, ¶50] Despite conclusory references to
"disparate treatment," she has offered no factual detail regarding similarly-situated
individuals treated differently than she or linking in any way the alleged treatment
to the filing of the EEOC charge.  Rather, Broussard's belief as to what triggered
the alleged adverse action is stated in the pleadings:

---

[5]The Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69,
126 S.Ct. 2405, 2415, 165 L.Ed.2d 345(2006) found that a change in an employee's work schedule
could be considered an adverse employment action in the context of a Title VII retaliation claim.
The *Burlington Northern* holding is confined to Title VII's anti-retaliation provision.

Plaintiff's immediate demotion and transfer to an overnight shift bore all affirmative, outward manifestation of being an act of discrimination and/or retaliation undertaken in response to Plaintiff invoking her appeal rights following the unjust charges which were sustained against her. [Rec. Doc. 1,  ¶37].

Defendants Craft, Montgomery, and the others knowingly and intentionally transferred and demoted Plaintiff to a inconvenient, deleterious, dangerous, and ultimately hostile workplace environment in retaliation for her complaint of contumacious misconduct by Sgt. Brown. [Rec. Doc. 1,  ¶48].

The Defendants have acted in retaliation against Plaintiff for reporting known misconduct of a fellow law enforcement officer. [Rec. Doc. 1,  ¶53].

In brief to this Court in response to the defendants' motions, Broussard, consistent with the allegations in the complaint, states:

Plaintiff contends the transfer was both materially adverse and made and done in retaliation for Plaintiff's invocation of her appeal rights following her receipt of an unjustified letter of reprimand. It is this retaliatory demotion and/or retaliatory shift-change which forms the basis of the present action. [Rec. Doc. 19, p. 11].

The Court concludes that the plaintiff has failed to make out a plausible claim under Title VII's substantive or retaliatory provisions.  It is therefore recommended that those claims be dismissed.  The same analysis is employed in considering the plaintiff's state law claims through provisions of  La. R.S. 23: 301 et seq. *McCoy v. City of Shreveport*, 492 F.3d 551, fn. 4(5th Cir. 2007).  Thus, the same recommendation is made regarding those claims.

### THE PUNITIVE DAMAGES CLAIMS

It has been thirty-three years since the Supreme Court clearly stated: "we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *Davis v. West Community Hospital*, 755 F.2d 455, 459,467 (5th Cir. 1985).  Further, "'an official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity.' As such, a plaintiff is barred from recovering punitive damages against an official acting in his official capacity." *Givs v. City of Eunice*, No. 6:05-CV-0788, 2006 WL 1831528, at *1 (W.D. La. June 29, 2006) (quoting *Kentucky v. Graham,* 473 U.S. 159, 165 (2006). Accordingly, the Court finds that the plaintiff does not have a valid claim for punitive damages against the municipal defendant and recommends that claim be dismissed.

Punitive damages are, however, recoverable against municipal employees who are sued in their individual capacities pursuant to a §1983 claim. *Id.*, citing *Smith v. Wade*, 461 U.S. 30, 35 (1983), and *Williams v. Kaufman County*, 352 F.3d 994, 1015 (5th Cir. 2003).  Therefore, to the extent that the plaintiff has asserted a punitive damages claim against Chief Craft, Mike Brown and Cornell Montgomery in their individual capacities, those claims remain available.

Given that this Court has recommended dismissal of all Title VII claims, the issue of punitive damages applicable to those claims is moot. However, this Court notes in passing that punitive damages are statutorily barred in claims against "a government, government agency or political subdivision." 42 U.S.C. §1981a(b)(1). Further, a hiring or supervisory official acting in his personal or individual capacity is not an "employer" in a Title VII claim, and therefore, cannot be liable for punitive damages. *Huckabay v. Moore,* 142 F.3d 233, 241 (5th Cir. 1988); *Givs v. City of Eunice,* 2006 WL 1831528 at *2.

## CONCLUSION AND RECOMMENDATIONS

The plaintiff has failed to allege facts sufficient to state a cause of action under Title VII, whether for retaliation or discrimination. Therefore, the Court recommends the defendants' motion be granted and this claim be dismissed. There are no viable claims for punitive damages against the municipal defendant either under Title VII or §1983, and therefore, the Court recommends the motion be granted to the extent the punitive damage claims are alleged under either theory. The Court recommends the motion be denied with regard to punitive damages arising out of the individual capacity claims against Chief Craft, Montgomery and Brown.

### STATE LAW CLAIMS

*A. CLAIMS UNDER CIVIL CODE ARTS. 2315, 2317*

Broussard asserts claims under "the laws of the State of Louisiana, including Civil Code Articles 2315 and 2317," seeking to recover for the defendants' "negligence, intentional negligence and negligence *per se* under Louisiana law." [Rec. Doc. 1, ¶60].

Article 2315 is the seminal statute for Louisiana tort law.  Article 2317 modifies Article 2315 by expressly making employers liable for the torts of their employees.  Under the Louisiana Workers' Compensation Act, La. R.S. 23:1032, however, an employee injured while in the course and scope of his employment is generally limited to the recovery of workers' compensation benefits as his exclusive remedy against his employer and may not sue his employer in tort.  The workers' compensation statute represents a compromise by which the employer and employee both surrender valuable rights, with the employee agreeing to accept the certainty of workers' compensation benefits as his exclusive remedy in exchange for surrendering his right to seek tort recovery from his employer. *Harris v. Wal-Mart Stores, Inc*., 205 F.3d 847, 849 (5th Cir. 2000).  See, also, *Benoit v. Turner Industries Group, L.L.C*., 2011-1130 (La. 01/24/12), 85 So.3d

629, 634.  This principle also immunizes employees against negligence claims by their co-workers. *White v. Monsanto Co*., 585 So.2d 1205, 1208 (La. 1991).

Jurisprudence confirms that Lafayette police officers are employed by the Lafayette Consolidated Government and covered under the state worker's compensation scheme.  *Fontenot v. Patterson Insurance*, 2009-0669 (La. 10/29/09), 23 So.3d 259, 263-264;  *LeBlanc v. Lafayette Consolidated Government*, 2007-1608 (La. App. 3 Cir. 05/28/08), 983 So.2d 1022. Accordingly, the plaintiff in this lawsuit is statutorily barred  from suing her employer, Lafayette Consolidated City-Parish Government, or her co-employees, the remaining defendants named in the complaint, for their alleged state-law negligence unless the factual allegations of the complaint establish that she can rely on the intentional tort exclusion.

The only exception to the exclusivity rule is that an employee may sue his employer to recover for intentionally inflicted injuries. La. R.S. 23:1032(B).   In all other respects, as expressly stated in the pertinent statute, "[t]his exclusive remedy is exclusive of *all* claims. . . ." La. R.S. 23:1032(A)(1)(b).  [Emphasis added.] To state a claim of intentional tort, the plaintiff must allege facts that demonstrate that the employer either (1) consciously desired the physical result of his act, whatever the likelihood of that result happening from his conduct, or (2)

knew that result was substantially certain to follow from his conduct, whatever his

desire may have been as to that result. *Moreau v. Moreau's Material Yard, LLC*.,

(La. 09/21/12), 98 So.3d 297, 298.

> The jurisprudence expounding on these terms was recently summarized:

> The phrase "substantially certain to follow" requires more than a
> reasonable probability that an injury will occur. . . .This term has been
> interpreted as being equivalent to "inevitable," "virtually sure," and
> "incapable of failing." . . . Believing that someone may, or even
> probably will eventually get hurt if a workplace practice is continued
> does not rise to the level of an intentional act, but instead falls within
> the range of negligent acts that are covered by workers'
> compensation. . . . Neither knowledge and appreciation of a risk nor
> reckless or wanton conduct by an employer constitutes an intentional
> wrongdoing. . . .  Further, even if the alleged conduct goes beyond
> aggravated negligence, and includes such elements as knowingly
> permitting a hazardous work condition to exist, knowingly ordering a
> claimant to perform an extremely dangerous job, or willfully failing
> to furnish a safe place to work, this still falls short of the actual
> intention to injure that robs the injury of accidental character.

*Gardner v. Craft*, (La. App. 2d Cir. 03/05/14), 137 So.3d 69, 75.

Although Broussard contends she is entitled to recover for "intentional

negligence" [Rec. Doc. 1, ¶ 60(J)], the section of the complaint setting out state

law tort allegations contains only the conclusory allegations of failure to train,

supervise, manage, discipline and select/retain Defendants Stanley, Craft and

Alfred; failure to conduct appropriate/adequate/meaningful internal investigations;

and failure to correct a police "Code of Silence," a term emphasized with

quotation marks, but neither referenced nor explained elsewhere in the complaint.

[Rec. Doc. 1, ¶ 60] These conclusory allegations, without more, are insufficient to

state a plausible claim for state-law intentional tort and the Court therefore

recommends that all of the plaintiffs' state-law tort claims based on Articles 2315

and 2317 be dismissed.

## B. *THE WHISTLEBLOWER CLAIMS*

Broussard has also alleged that the defendants discriminated and retaliated

against her in violation of La. R.S. 23:967 and La. R.S. 30:3027.  Both statutes are

whistleblower provisions.  La. R.S. 30:2027, however, has no application to the

facts of this case.  That statute prohibits retaliation by employers against

employees who, in good faith, report violations of environmental laws, rules or

regulations or assist in investigations regarding such violations.  Broussard has

conceded in brief that reference to the statute was made in error. [Rec. Doc. 19, p.

25]. Thus, the Court recommends the claim be dismissed.

The Louisiana Whistleblower Statute at La. R.S. 23:967 provides certain

protections to employees who threaten to disclose an employer's illegal activity.

The substantive section contained in Paragraph A of the statute prohibits reprisal

by an employer "against an employee who in good faith, and after advising the

employer of the violation of law: (1) Discloses or threatens to disclose a

workplace act or practice that is in violation of state law. (2) provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law. (3) Objects to or refuses to participate in an employment act or practice that is in violation of law."

The definition of "reprisal" includes "firing, layoff, loss of benefits, or any other discriminatory action" taken as a result of protected actions. *Id.* § 23:967(C)(1). "The Louisiana Whistleblower Statute targets serious employer conduct that violates the law." *Fondren v. Greater New Orleans Expressway Com'n,* 03–1383 (La.App. 5 Cir. 4/27/04), 871 So.2d 688, 691 (citing *Puig v. Greater New Orleans Expressway Com'n,* 00–924 (La.App. 5 Cir. 10/31/00), 772 So.2d 842, 845, *writ denied,* 00–3531 (La. 3/9/01), 786 So.2d 731). "For an employee to establish a claim under La. R.S. 23:967, she must prove that her employer committed an actual violation of state law." *Stevenson v. Williamson,* 547 F.Supp.2d at 558; *Goulas v. LaGreca*, 945 F. Supp. 2d 693, 702 (E.D. La. 2013) aff'd sub nom. 13-30651, 2014 WL 718433 (5th Cir. 2014).

The complaint sets out the substance of Broussard's complaint about Brown.  Although vague in detail, the allegations suggest that Brown violated police department policies.  The plaintiff made no charge that her employer committed a violation of state law, as required by the statutory provision.  The

alleged violator was a co-employee.  Further, the plaintiff contends she was
commended for her actions and the officer was disciplined as a result.  Those
factual allegations do not support a plausible claim under the Louisiana statutory
provision, and therefore, the Court recommends the claim be dismissed.

## C. *THE LOUISIANA EMPLOYMENT DISCRIMINATION CLAIMS*

The Louisiana Employment Discrimination Law, La. R.S. 23:301 (LEDL)
prohibits an employer from discriminating against an individual based on his race,
color, religion, sex, age, or national origin. The scope of the LADL is the same as
Title VII, and therefore, claims under the LADL are analyzed under the Title VII
framework and jurisprudential precedent. *La Day v. Catalyst Technology, Inc.* 302
F.3d 474, 477 (5th Cir. 2002); *Alderman v. Great Atlantic & Pacific Tea Co., Inc*.
332 F.Supp.2d 932, 936 (E.D.La. 2004).

Since the outcome would be the same as the outcome under Title VII
discussed above, the Court recommends that the LEDL claims be dismissed.

## CONCLUSION AND RECOMMENDATIONS

All of the plaintiff's state law claims lack merit. The tort claims are barred
by the exclusivity of the state worker's compensation statute. The whistleblower
claims either (a) have no application to the facts of this case, or (b) do not apply as
there has been no allegation of a violation of law by the employer. The LEDL

claims suffer the same fate as the Title VII claims. Therefore, the Court recommends that all of the plaintiff's state law claims be dismissed.

Months before this suit was filed in October of 2013, this Court allowed these same attorneys for the plaintiff the opportunity to amend a similar suit that suffered from many of the same defects as this one. The result further complicated the litigation resulting in a report and recommendation of similar length to this one with essentially the same outcome -- numerous frivolous claims being dismissed on the same grounds as in this case. After the district court adopted that report and recommendation over objection on January 30, 2013, this Court issued a separate report and recommended sanctions under Rule 11 which were not only affirmed, but increased by the district court.[6]  In that report, which was published after the filing of this complaint, this Court noted similar issues with these same attorneys in other districts in this state. Thus, the recommended sanctions included a reprimand and admonishment which has apparently gone unheeded given the opposition to this motion that was filed after the report came out. Therefore, this Court does not recommend a further opportunity for amendment of this complaint.

---

[6] *Marceaux v. Lafayette City-Parish Consolidated Government,* 6:12-cv-1532, Rec. Docs. 79, 84, 130, 138.

If the recommendations of this Court are accepted,  the plaintiff's claims are reduced to §1983 claims for compensatory damages against the Lafayette City-Parish Consolidated Government, and individual capacity claims for compensatory and punitive damages against Chief Craft, Cornell Montgomery and Mike Brown based on alleged violations of Broussard's First Amendment free speech rights which resulted in adverse employment actions.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within  fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*,

79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana this 12th day of August, 2014.

_____
Patrick J. Hanna
United States Magistrate Judge


COPY SENT:

DATE:  __8/12/2014__
BY: _____EFA_____
TO: _____RFD_____
          cg

-51-