UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DANA L. BROUSSARD                        CIVIL ACTION NO. 6:13-cv-2872

VERSUS                                   JUDGE DOHERTY

LAFAYETTE CONSOLIDATED                   MAGISTRATE JUDGE HANNA
GOVERNMENT, ET AL


<u>**REPORT  AND  RECOMMENDATION**</u>


Currently pending before the Court are the defendants' motions  for summary judgment that were brought  in  the  alternative  to  motions  to  dismiss  under Fed.R.Civ.P. 12(b)(5) and (6). [Rec. Doc. 6-7].  The motions were referred to the undersigned  for  review,  report,  and  recommendation  in  accordance  with  the provisions of 28 U.S.C.§636 and the standing orders of the court.  This Court initially limited its review solely to the allegations of the complaint and issued a report and recommendation only on the motions to dismiss. The Court recommended dismissal of a number of claims and parties pursuant to Rule 12(b)(6) and deferred addressing the motions for summary judgment until after the motions to dismiss were finalized at  the  district court level. [Rec. Doc. 31].  Without objection,  the district court adopted the report and recommendation as its judgment. [Rec. Doc. 32].

Therefore, as this case now stands after the motions to dismiss were granted in part and denied in part, Cpl. Dana L. Broussard  has claims for money damages under

42 U.S.C. §§1983 based on alleged adverse employment actions taken against her in retaliation for exercising her First Amendment rights. The remaining  defendants are the Lafayette City-Parish Consolidated Government, and Police Chief James P. "Jim" Craft, Captain Cornell Montgomery and Sergeant Mike Brown in their  individual capacities.  The motions for summary judgment set forth that these officers sued in their individual capacities are entitled to qualified immunity. In addition, unlike the motions to dismiss which were evaluated solely on the allegations of the complaint, the motions provide evidence from which the validity of the claims against the officers and the municipal entity can be determined. For the following reasons, and after consideration of the evidence submitted by the parties, it is recommended that the motions for summary judgment be granted and that the remainder of the plaintiff's claims be dismissed with prejudice.

**Factual Background**

The allegations of the complaint vary to some degree from the evidence submitted by Broussard. What does not vary and is not contested is that Broussard was working a day shift, and after a sequence of events, on February 22, 2013, she was temporarily transferred to the night shift. [Rec. Docs. 1, ¶ 35; 6-5, 6-6, 10 and

19-1].[1]  She had no change in pay or rank and on August 18, 2013, when a suitable

position on the day shift became available,  she was transferred back to the day

shift albeit at different hours than she had previously worked. [Id.].

    In the complaint, Broussard alleged that on or about August 27, 2012,

several months before she was transferred, she  related a complaint to her superior,

Captain Montgomery,  that Sgt. Brown had violated the policies of the police

department pertaining to the number of hours he worked.  Captain Montgomery,

who initially rejected the complaint, relayed the complaint to his superior,

Commander Alfred, and then the plaintiff was "instructed to resubmit same upon

'official' Lafayette Police Department forms." [Rec. Doc. 1, ¶ 10-16]. In her

affidavit, Broussard avers that she "was ordered by [her] chain of command,

Captain Cornell Montgomery, to file a complaint against Sgt. Michael Brown."

[Rec. Doc. 19-1, pp. 1-2].  She further avers that "after being ordered to file the

complaint which I said I did not want to file, Captain Montgomery told others that

he was going to transfer me from my original shift." [Id.].

    Broussard further alleges that on or about August 31, 2012, after Brown had

---

[1]    This Court notes that the defendants complied with LR 56.1 and included a statement of material facts as to which the moving party contends there is no issue to be tried. [Rec. Doc. 10]. The plaintiff did NOT comply with LR 56.2 that requires her to provide a statement as to which there exists a genuine issue to be tried. Therefore, per LR 56.2, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed admitted, for purposes of the motion . .." since the statements were not controverted as required by this rule.

been inappropriately notified that she filed a complaint against him, Brown filed his own complaint against her. [Rec. Doc. 1, ¶ 18-19].  This exchange is corroborated to some extent in a document dated March 5, 2013 that was prepared by Chief Craft as a formal response to a grievance submitted by Broussard after her transfer, however, there is one additional fact that is not mentioned by Broussard. [Rec. Doc. 6-6, p. 3-4]. According to Craft's account, Sgt. Brown had documented a deficiency in Broussard's performance at which point Broussard began an "unauthorized and unofficial inquiry into his off-duty employment" which led to the complaint against Brown over his off duty working hours. [Id.]. Chief Craft went on to state that  Brown maintained that Broussard filed the complaint against him in retaliation for Brown documenting Broussard's deficient performance. [Id.]. Brown then filed a complaint against Broussard alleging she had violated policy by conducting an unauthorized investigation into his activities. [Id.].

Broussard's complaint against Brown was sustained in November, 2012, and Brown was disciplined as a result. [Rec. Docs. 6-6, p. 3; and 10].   Brown's complaint against Broussard was  also investigated, sustained and Broussard received a letter of reprimand on February 7, 2013 which she appealed to the Lafayette Municipal Fire and Police Civil Service Board. [Rec. Docs. 1, ¶ 26-30;

6-6, p. 4; and 10].[2]

According to Broussard's complaint, after she filed the appeal she was advised she would be transferred to the night shift. [Rec. Doc. 1, ¶ 31].[3] According to Chief Craft, after the claim-counter claims occurred between Broussard and Brown,  Craft authorized a transfer of Broussard so that she and Brown would not have to encounter one another. [Rec. Docs. 6-6, pp. 1,4; and 10]. The record is consistent that efforts were made to place Broussard on a day shift, however, at that time none were available so she was placed on the night shift. [Rec. Docs. 6-5, pp. 1,3; and 6-6, pp. 1, 4]. When a day shift opening became available that was away from Sgt. Brown, she was transferred to that position at her same rank and pay. [Rec. Docs. 6-5, pp. 1,5; 6-6, pp. 2,6; and 10]. According to Chief Craft, no Lafayette police officer is guaranteed a particular shift or rotation. [Rec. Doc. 6-6, p. 1]. Broussard does not dispute this statement.

---

[2]     It is not clear from the record what date the appeal to the Board was filed, however, La.R.S. 33:2501(A) imposes a 15 day deadline from the date of the action at issue to file a demand for hearing which is to be held within thirty days of the written request. The judgment of the 15th Judicial District Court in the case of *Broussard v. Lafayette City-Parish Consolidated Government/Lafayette Police Department*, 2013-5239-A, indicates a hearing was held by the Board on September 11, 2013 (after Broussard had been transferred back to the day shift) at which the Board upheld the Letter of Reprimand. The district court affirmed that decision on February 24, 2014. That ruling has apparently been appealed to the Louisiana Third Circuit Court of Appeal.

[3]     Broussard also filed a Charge of Discrimination with the Equal Employment Opportunity Commission on March 9, 2013 after she had already been transferred to the night shift. [Rec. Doc. 1, ¶ 49]. Thus, the filing of the EEOC complaint cannot form the basis for a retaliation claim.

Mixed in with all of these events was the apparent need to transfer Broussard from her position as Neighborhood Resource Officer under the supervision of Captain Montgomery due to complaints that had been made at a public meeting regarding her performance, which were not the first in that regard. [Rec. Docs. 6-5, p. 1,3; and 6-6, pp. 2,4]. Broussard does not address these assertions in her affidavit, but in the complaint she alleges that there were no citizen complaints of any kind in her personnel file. [Rec. Doc. 1 ¶ 35].  In the response to her grievance, Chief Craft points out that, because of the public complaints,  he could not leave Broussard in the resource officer position until another day shift position opened up, and therefore, her transfer to the night shift was made with the assurance of her superiors that as soon as a day shift became available she would be transferred, ahead of others who had already requested consideration, due to her status as a single parent and her concerns for her son. [Rec. Docs. 6-5, p. 3; and 6-6, pp. 2-4]. That transfer occurred on August 18, 2013. [Rec. Docs. 6-5, p. 1,5; and  6-6, pp. 2,6].

## Standard of Review

Under Fed.R.Civ.P. 56(a), summary judgment is appropriate when there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law.  A fact is material if proof of its existence or

nonexistence might affect the outcome of the lawsuit under the applicable governing law.[4]  A genuine issue of material fact exists if a reasonable jury could render a verdict for the nonmoving party.[5]

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion and identifying those parts of the record that demonstrate the absence of genuine issues of material fact.[6]  If the moving party carries its initial burden, the burden shifts to the nonmoving party to demonstrate the existence of a genuine issue of a material fact.[7]

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that there is insufficient proof concerning an essential element of the nonmoving party's claim.[8]  The motion should be granted if the nonmoving party cannot

---

[4]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009); *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

[5]     *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 252; *Hamilton v. Segue Software, Inc.*, 232 F.3d at 477.

[6]     *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007), citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[7]     *Id*.

[8]     *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008), citing *Celotex Corp. v. Catrett*, 477 U.S. at 325.

produce evidence to support an essential element of its claim.[9]

## Applicable Substantive Law and Analysis

"Section 1983 confers no substantive rights, but merely provides a remedy for the violation [by a person acting under color of state law,] *of rights* secured under the Constitution and laws of the United States."[10]   Therefore, an underlying constitutional or statutory violation is a predicate to any theory of liability under §1983.[11]   To establish a claim under §1983 based on retaliation for the exercise of First Amendment rights, a plaintiff must prove the following elements:  (1) that she suffered an adverse employment decision, (2) that her speech involved a matter of public concern, (3) that her interest in speaking outweighed the governmental defendant's interest in promoting efficiency, and (4) that the protected speech motivated the defendant's conduct.[12]

Adverse employment actions in this context include "discharges, demotions, refusals to hire, refusals to promote and reprimands."[13] The Fifth Circuit has

---

[9]      *Condrey v. Suntrust Bank of Ga.*, 431 F.3d 191, 197 (5th Cir. 2005).

[10]      *Southwestern Bell Telephone, LP v. City of Houston*, 529 F.3d 257, 260 (5th Cir. 2008). (emphasis in original).

[11]      *Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989).

[12]      *Juarez v. Aguilar*, 666 F.3d 325, 332 (5th Cir. 2011); *Kinney v. Weaver*, 367 F.3d 337, 356 (5th Cir. 2004) (en banc).

[13]      *Id.,* (quoting *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999)).

clearly set forth the standard the plaintiff must meet on this element:

> A transfer, even without an accompanying cut in pay or other tangible benefits, may constitute an adverse employment action under 42 U.S.C. § 1983. However, it is insufficient for a plaintiff to show merely that he has been transferred from a job he likes to one that he considers less desirable. Rather, a plaintiff must produce enough evidence to allow a reasonable trier of fact to conclude that, when viewed objectively, the transfer caused harm to the plaintiff, "sufficiently serious to constitute a constitutional injury." . . . Personnel actions that are commonly considered serious enough to inflict constitutional injury are discharges, demotions, refusals to hire, refusals to promote, and reprimands. . .  A plaintiff must establish that his transfer was equivalent to one of those actions to show that he has suffered an adverse personnel action.

*Serna v. City of San Antonio,* 244 F.3d 479, 483 (5th Cir. 2001)(citations omitted).

A transfer may be equivalent to a demotion and consequently an adverse employment action even without resulting in a decrease in pay, title, or grade if the new position proves to be objectively worse than the prior position, such as being less prestigious, less interesting, or providing less room for advancement.[14] However, a temporary transfer to the night shift, or merely changing the hours Broussard worked on the day shift, without more, does not constitute an adverse employment action.[15]

---

[14]     *Porter v. Valdez*, 424 Fed. App'x 382, 387 (5th Cir. 2011); *Sharp v. City of Houston*, 164 F.3d 923, 933 (5th Cir. 1999); *Forsyth v. City of Dallas*, 91 F.3d 769, 774 (5th Cir. 1996); *Click v. Copeland,* 970 F.2d 106, 109 (5th Cir. 1992).

[15]     *Benningfield v. City of Houston,* 157 F.3d 369, 376 (5th Cir. 1998); see also *Hernandez v. Sikorsky Support Services, Inc.* 495 Fed. App'x. 435, 438 (5th Cir. 2012 and *Hunt v.*

In her affidavit, the plaintiff avers that the temporary transfer to the night shift and subsequent change in hours on the day shift is not to her satisfaction and, at least for some period of time, created some personal hardships in trying to adjust her schedule and attend to the needs of her son. [Rec. Doc. 19-1]. However, she provided no evidence whatsoever that there was "any objective difference between shifts as measured by compensation, duties, benefits, job status, or objective prestige."[16]   The plaintiff bears the burden to show that she suffered an adverse employment action.[17] Neither the shift change nor temporary transfer to the night shift rise to that level based on the record presented.  Therefore, neither the shift change nor the temporary transfer can form the basis of her retaliation claim. However, a reprimand may constitute an adverse employment action. Thus, the second factor must be analyzed.

With regard to the second element, the court must engage in a two-step evaluation, first determining whether the plaintiff was speaking as a citizen rather than as an employee and next whether the speech was on a topic of public

_Rapides Healthcare System, LLC._ 157 F.3d 369, 377 (5th Cir 2001) in a Title VII context.

[16]     _Hernandez v. Sikorsky Support Services,_ 495 Fed. App'x at 438.

[17]     The plaintiff alleged that the complaint of Brown against her was false. However, The accusations of Brown, even if false, do not constitute an adverse employment action under § 1983. _Breaux v. City of Garland_, 205 F.3d 150, 157-58 (5th Cir. 2000).

-10-

concern.[18]  The determination of whether a public employee's speech addresses a

matter of public concern is not a factual issue; it is a question of law to be decided

by the court.[19]

This Court must first focus on the role of Broussard at the time she made her

complaint against Brown as the distinction between a speaker acting as a citizen

versus acting pursuant to a public employee's official duties is dispositive.[20]

Since *Garcetti v. Ceballos*, the question of whether speech is entitled to First

Amendment protection is a legal conclusion properly decided at the summary

judgment stage.[21]  *Garcetti* specifically held that "when public employees make

statements pursuant to their official duties, the employees are not speaking as

citizens for First Amendment purposes, and the Constitution does not insulate

their communications from employer discipline."[22]  "Even if the speech is of great

social importance, it is not protected by the First Amendment so long as it was

---

[18]     *Davis v. McKinney*, 518 F.3d 304, 311-12 (5th Cir. 2008).

[19]     *Coughlin v. Lee*, 946 F.2d 1152, 1156 (5th Cir. 1991).

[20]     *Charles v. Grief*  522 F.3d 508, 512 (5th Cir. 2008) citing *Garcetti v. Ceballos*, 547
U.S. 410, 421; 126 S.Ct. 1951, 1960 (2006).

[21]     *Id.*, at 513 fn. 17 citing *Williams v. Dallas Independent School District*, 480 F.3d 689,
691-694 (5th Cir. 2007).

[22]     *Garcetti*, 547 U.S. at 421.

-11-

made pursuant to the worker's official duties."[23] Whether the speech is made inside the office rather than publicly, or whether the speech pertains to the employee's job are not dispositive, rather, it is whether the speech was made pursuant to the employee's job duties that is the "controlling factor."[24]

     The evidence in this record demonstrates Broussard was made an official complaint in her capacity as a police officer, against a fellow police officer pertaining to the hours he worked as a police officer, on official departmental paperwork, to the individuals in the department charged with conducting the investigation into her complaint. The complaint was investigated and Sgt. Brown was disciplined as a result. There is no evidence Broussard made any other statements outside of her official capacity, and therefore, her speech in making the complaint was not entitled to First Amendment protection. Since it was the complaint against Brown which led to his complaint against her that ultimately caused her to receive a reprimand, Broussard has failed to establish one of the elements necessary to prevail on a First Amendment retaliation claim.

     Having failed to meet her burden that she suffered an adverse employment action associated with her temporary transfer to the night shift and change in hours

---

[23]   *Williams v. Dallas Independent School District,* 480 F.3d at 692 citing *Garcetti.*

[24]   *Garcetti,* 547 U.S. at 420-421.

on the day shift, all of Broussard's claims of retaliation, whether against the municipality or the individuals must be dismissed on that basis. Likewise, having failed to establish that the speech in the form of the complaint which led to the reprimand was protected speech, all of Broussard's claims, whether against the municipality or the individuals must also be dismissed. Thus, consideration of qualified immunity need not be addressed as Broussard has failed to establish a Constitutional violation. However, for the sake of of completeness, the defense will be analyzed.

The defense of qualified immunity precludes suit against all but the "plainly incompetent or those who knowingly violate the law."[25]  Once asserted by a government official, the burden of proof shifts to the plaintiff to negate qualified immunity.[26]  Recently, the Fifth Circuit reiterated the oft-cited standard to address qualified immunity:

> In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. . . Under the first prong, courts assess whether the facts, taken in the light most favorable to the party asserting the injury, show the [government actor's] conduct violated a federal right. . .  Under the second prong, courts ask whether the right in question was 'clearly established' at the time of the violation. . . . Accordingly, [g]overnmental actors are shielded

---

[25]   *Brumfield v. Collins,* 551 F.3d at 326.

[26]   *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

> from liability for civil damages if their actions did not violate clearly
> established statutory or constitutional rights of which a reasonable
> person would have known. . . Courts may address these prongs in any
> order.

*Moore v. Huse,* 2014 WL 3866107, *3 (5th Cir. 8/7/14) (citations and internal
quotation marks omitted).

This Court having already found that no action by the three police officers
violated a constitutional right, the analysis would end and the claims against the
officers would be rightfully dismissed. However, at least two of the officers would
be entitled to immunity under the second prong and the third would be entitled to
immunity under the first.

As the court noted in *Moore v. Huse,* "[t]he second prong of qualified
immunity focuses on whether a reasonable official would have known that [the
adverse employment action] in response to [the plaintiff's] protected speech was a
violation of established law-not whether a reasonable mayor or city council
member could have chosen to suspend [the plaintiff] in light of the evidence
presented of [the plaintiff's] wrongdoing."[27]

The actions of Captain Montgomery and/or Chief Craft to effect a
temporary transfer to the night shift and subsequent change in the plaintiff's
daytime working hours to move her away from an individual within the

---

[27]     *Id.,* at note 2.

department with whom she clearly had a conflict, is a reasonable personnel decision. The cases in which transfers met the standard of an adverse employment action are relatively few and easily distinguishable from the instant case where the only evidence is of a temporary transfer to the night shift, followed by a preferential transfer back to the day shift with a minor change in working hours, and no other objective evidence that would rise to the level of the transfer/change in hours being considered a demotion.[28]  Given the existing state of the jurisprudence, one cannot conclude that any reasonable official would consider the temporary transfer/hourly change to be a violation of clearly established law.

Similarly, although Chief Craft signed the letter of reprimand, it was only done after an investigation was conducted by internal affairs and the recommendation was made.[29] It would create an absurd result if a chief of police would be considered by any reasonable official to be in violation of clearly established law for following the recommendation of reprimand as a result of an internal affairs investigation.

---

[28]     Cf., *Click v. Copeland,* 970 F.2d 106 (5th Cir. 1992); *Forsyth v. City of Dallas,* 91 F.3d 769 (5th Cir. 1996); *Benningfield v. City of Houston, 157 F.3d 369 (5th Cir. 1998).*

[29]     As previously noted, the reprimand has been upheld by the Lafayette Municipal Fire and Police Civil Service Board and the 15th Judicial District Court as having been made in good faith and with just cause. See *Broussard v. Lafayette City-Parish Consolidated Government/Lafayette Police Department,* 2013-5239-A.

There is no evidence that the plaintiff has presented that would demonstrate either of these actions were a violation of clearly established law, much less that any reasonable police chief or superior officer would have thought as much. Therefore, both Chief Craft and Captain Montgomery would be entitled to qualified immunity.

Since Sgt. Brown had no authority to transfer Broussard, and his accusations, even if false, would not constitute an adverse employment action, he would be entitled to qualified immunity under the first prong.[30]

## Conclusion and Recommendations

In response to the defendants' motions, the plaintiff bears the burden of proof to establish the elements of her claim, as the defendants set forth the absence of proof of those elements. The plaintiff has failed to demonstrate that she suffered an adverse employment action when she was temporarily transferred to the night shift or when her daytime shift hours were changed. Likewise, her complaint against Sgt. Brown which was investigated and led to her reprimand, was not protected speech under the First Amendment as she was speaking in her official capacity. Having failed to establish these elements, her claims must necessarily fail. In addition, the plaintiff has failed to meet her burden to establish that all

---

[30]     *Breaux v. City of Garland*, 205 F.3d at 157-58.

three officers are not entitled to qualified immunity.

Considering the foregoing,

**IT IS RECOMMENDED** that the defendants' motions for summary judgment, Rec.Docs. 6 and 7, be **GRANTED**, and that the plaintiff's claims against the remaining defendants be **dismissed with prejudice**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*,

-17-

79 F.3d 1415 (5th Cir. 1996).


        Signed at Lafayette, Louisiana this 16th day of September, 2014.




                                    _____
                                    Patrick J. Hanna
                                    United States Magistrate Judge




                        COPY SENT:

                        DATE:  __9/16/2014_____
                        BY: _____EFA_____
                        TO: _____RFD_____
                                      cg










                                    -18-