UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

DANA L. BROUSSARD                    CIVIL ACTION NO. 6:13-cv-2872

VERSUS                               JUDGE DOHERTY

LAFAYETTE CONSOLIDATED               MAGISTRATE JUDGE HANNA
GOVERNMENT, ET AL

## REPORT  AND  RECOMMENDATION

Currently pending before the Court is the joint motion of all defendants for

sanctions [Rec. Doc. 21], which was referred to the undersigned for review, report,

and recommendation in accordance with the provisions of 28 U.S.C.§ 636 and the

standing orders of this Court.  The motion is opposed [Rec. Doc. 29].  An evidentiary

hearing was conducted and oral argument was heard on the motion on March 31,

2015.  For the following reasons, it is recommended that the Motion for Sanctions

under Rule 11 and/or 28 U.S.C. § 1927 be granted in part and denied in part.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Cpl. Dana L. Broussard brought claims under 42 U.S.C. §§1983 and 1988,

Title VII, and the First, Fourth, Fifth, and Fourteenth Amendments to the United

States Constitution in a complaint for money damages.  Louisiana state law claims

were also asserted. [Rec. Doc. 1]. Named as defendants were Lafayette City-Parish

Consolidated Government; Lafayette Police Department through the Lafayette City-Parish Consolidated Government; Lester Joseph "Joey" Durel, Jr. in his capacity as President of the Lafayette City-Parish Consolidated Government; Dee Edward Stanley, individually and in his capacity as Chief Administrative Officer of the Lafayette City-Parish Consolidated Government; James P. "Jim" Craft, individually and in his capacity as Chief of the Lafayette Police Department; George "Jackie" Alfred, individually and in his capacity as Patrol Division Commander of the Lafayette Police Department; Captain Cornell Montgomery, individually and in his capacity as a Captain in the Lafayette Police Department; Major Terry Head, individually and in his capacity as a Major in the Lafayette Police Department; Lieutenant Richard "Ricky" Rees, individually and in his capacity as a Lieutenant in the Lafayette Police Department; Sergeant Mike Brown, individually and in his capacity as a Sergeant in the Lafayette Police Department; and Ray Domingue, individually and in his capacity as Human Resources Manager of the Lafayette City-Parish Consolidated Government.[1] [Rec. Doc. 1, pp. 1-9].

On April 4, 2014, the defendants filed Motions to Dismiss pursuant to Rule 12(b)(5) and 12(b)(6) and Alternatively for Summary Judgment. [Rec. Docs. 6, 7].

---

[1]Service on the defendants was not made until 127 days after filing of the Complaint.  Copies of the Complaint and Summons were left with the receptionists for Lafayette Consolidated Government and Lafayette Police Department.

-2-

The instant sanctions motion was filed April 29, 2014. [Rec. Doc. 21]. In a Report and Recommendation issued on August 12, 2014, considering only the Rule 12(b)(6) motions, it was the recommendation of this Court that all of the plaintiff's claims based on the Fourth, Fifth, and Fourteenth Amendments be dismissed. It was also recommended that the plaintiff's §1983 claims against Durel, Stanley, Craft, Domingue, Alfred, Montgomery, Head, Rees and Brown, in their official capacities be dismissed based on redundancy  and that the claims against the Lafayette City Police Department be dismissed based on the fact that the department lacks the legal capacity to be sued. The §1983 individual capacity claims against Durel, Stanley, Alfred, Head, Rees, and Domingue were recommended for dismissal as well.  The plaintiff's Title VII claims were recommended for dismissal, along with the remaining state law claims asserted in the Complaint, and the undersigned recommended dismissal of the plaintiff's claims of entitlement to recovery of punitive damages against the municipal defendant.  Once those recommendations were accepted by the district court, the plaintiff's claims were reduced to §1983 claim for compensatory damages against the Lafayette City-Parish Consolidated Government, and individual capacity claims for compensatory and punitive damages against Chief Craft, Cornell Montgomery and Mike Brown based on alleged violations of the plaintiff's First Amendment free speech rights which resulted in adverse employment

-3-

actions. [Rec. Doc. 31].  Without objection, the district court adopted the report and recommendation as its judgment. [Rec. Doc. 32].

The undersigned then addressed the remaining claims of the plaintiff in the context of the defendants' alternative summary judgment motions and the assertion of the qualified immunity defense.  The alternative motions provided evidence from which the validity of the claims against the remaining individual  defendants and the municipal entity could be determined, and, on the more expanded consideration of the record allowed by the summary judgment rules, it was this Court's recommendation that the alternative motions for summary judgment be granted and that the remainder of the plaintiff's claims be dismissed with prejudice.  Objections were lodged by the plaintiff, to which the defendants responded, and on December 3, 2014, the district court adopted the Report and Recommendation as its judgment. [Rec. Doc. 39].

In December, 2014, the defendants separately filed motions for attorney fees and costs, as prevailing party defendants. [Rec. Docs. 40, 42].  Those motions were also referred to the undersigned.  A Report and Recommendation was issued January 29, 2015, granting the defendants' petition for recovery of costs and expenses, and denying recovery of attorney fees pursuant to §1988, finding that the claims for attorney fees, as presented, could not be separated to identify those reasonable attorney fees which were incurred solely because of frivolous claims presented by the

plaintiff, as required in *Fox v. Vice*, __ U.S. __, 131 S.Ct. 2205 (2011). [Rec. Doc. 51]. It was the finding of the undersigned that since §1988 does not authorize the award of attorney's fees against a plaintiff's attorney,

> it would be unfair to penalize Plaintiff for the decisions of her attorneys, and the undersigned declines to do so. Those issues can and should be addressed in the pending Motions for Sanctions whether under Fed. R. Civ. P. 11 or 28 U.S.C. §1927. [Rec. Doc. 51, p. 10].

The district court adopted the Report and Recommendation, and with that judgment, the only remaining motion to be resolved was the pending motion for sanctions. According to the defendants,

> The primary basis of this Motion is not so much the fact that Broussard seeks redress for her transfer to night shifts (though she was working a day shift at the time of filing) as the fact that her counsel, Stephen Spring and Christopher Alexander, Sr., asserted numerous meritless claims on her behalf, which they should have known were meritless in light of other similar proceedings they initiated in this Court. [Rec. Doc. 21-2, p. 2].

Citing the rulings issued by this Court in *Marceaux v. Lafayette City-Parish Consolidated Government*, 6:12-cv-1532, [Docs. 130, 138], the defendants assert that Plaintiff's counsel Spring and Alexander knew or should have known that many of the claims asserted on behalf of Broussard were meritless at the time suit was filed making the assertion of those claims sanctionable.[2]

---

[2] The plaintiff's appealed all of the rulings in *Marceaux*, and all of the rulings, including the imposition of sanctions under Rule 11, were affirmed by the Fifth Circuit. See

In response, the plaintiff (through her attorneys) argued that the *Marceaux* sanction ruling had not been issued when this suit was filed, and they therefore could not be held to know the claims might be sanctionable at that time.  While it is true that the sanctions rulings–both this Court's Report and Recommendation [Doc. 130] and Judge Haik's increase of the recommended sanction award, reprimand and admonishment [Doc. 138] - were published after the date this suit was filed, the underlying motion for sanctions asserting the meritless claims argument was filed in *Marceaux* on July 31, 2012, over one year before this suit was filed in October, 2013, and the motion remained pending at the time this suit was filed.

## APPLICABLE LAW AND ANALYSIS

### *The Applicable Legal Standards:*

The defendants' motion for sanctions is based on provisions of Rule 11 of the Federal Rules of Civil Procedure and the separate provisions applying to attorneys under 28 U.S.C. § 1927.  Under Rule 11(c)(1), appropriate sanctions may be imposed by the court on "any attorney, law firm, or party that is found to have violated the rule or is responsible for the violation."  Under 28 U.S.C. § 1927, only an "attorney or other person admitted to conduct cases in any court of the United States . . . who so

---

*Marceaux v. Lafayette City-Parish Consolidated Government,* 14-31043 c/w 14-31213 (6/8/2015).

multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Under the plain language of the statute, sanctions can be imposed only on an offending attorney, not on his client. *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 525 (5th Cir. 2002). This opinion will focus only on the actions of Plaintiff's counsel, Christopher Alexander and Stephen Spring, under both rules of law.[3]

### *Fed. R. Civ. P. 11*:

Rule 11(b) provides in part:

(b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper--whether by signing, filing, submitting, or later advocating it--an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:

(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

---

[3]      See *Skidmore Energy Inc. v. KPMG* 455 F.3d 564, 567-68 (5th Cir. 2006) setting forth when it is appropriate to sanction a party.

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

A violation of any of Rule 11(b)'s provisions justifies sanctions. *Whitehead v. Food Max of Mississippi, Inc*., 332 F.3d 796,802 (5th Cir. 2003).  As to the type of sanction imposed, the court should use the least severe sanction that furthers the purpose of Rule 11. *Jenkins v. Methodist Hospital of Dallas, Inc.*, 478 F.3d 255, 264 (5th Cir. 2007).  Rule 11(c)(2) provides the requirements for the separate filing, content and service of the motion for sanctions, and, based on a review of the record and the absence of objection from the plaintiff, it is the finding of the undersigned that those requirements have been met in the instant case.

In *Thomas v. Capital Security Services, Inc*., 836 F.2d 866, 874(5th Cir. 1988), the Fifth Circuit stated that:

> a construction of Rule 11 which evaluates an attorney's conduct at the time a "pleading, motion, or other paper" is signed is consistent with the intent of the rulemakers and the plain meaning of the language contained in the rule.  Like a snapshot, Rule 11 review focuses upon the instant when the picture is taken-when the signature is placed on the document.

The *Thomas* "snapshot" rule ensures that Rule 11 liability is assessed only for a violation existing at the moment of filing. *Skidmore Energy, Inc. v. KPMG*, 455 F.3d at 570.  Further, "the standard under which the attorney is measured [under Rule 11] is an objective, not subjective, standard of reasonableness under the circumstances". *Whitehead v. Food Max of Mississippi, Inc.,* 332 F.3d at 802 (quoting *Childs v. State Farm Mutual Automobile Ins. Co.*, 29 F.3d 1018, 1024 (5th Cir.1994)). Accordingly, an attorney's good faith will not, by itself, protect against the imposition of Rule 11 sanctions. *Childs v. State Farm*, 29 F.3d at 1024.

The plaintiff's Fourth Amendment claim was presented in the context of her alleged property interest in the vacation and leave time which she was compelled to use when she was temporarily transferred from her day shift assignment to the night shift, effectively constituting a reduction in salary. [Rec. Doc. 19, pp. 22-23]. In support of her position, the plaintiff repeatedly cited the Seventh Circuit case of *Washington v. Illinois Department of Revenue*, 420 F.3d 658 (7th Cir. 2005) which was cited by the Supreme Court in *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 69 (2006),  to find that a schedule change in an employee's work schedule could be considered an adverse employment action in the context of a Title VII claim. The plaintiff argued that the same standard should apply to her §1983 action - a point with which this Court disagreed, and therefore, the

recommendation that the claim under the Fourth Amendment be dismissed. [Rec. Doc. 31, pp. 10-11]. However, because that issue had not been settled by the Fifth Circuit, the undersigned does not consider the Fourth Amendment claim to be violative of Rule 11.

The Fifth Amendment claim was dismissed because it applies to federal actors and there is no dispute that none of the named defendants were federal actors. This same type of allegation formed the basis of the sanctions under Rule 11 in *Marceaux*. It is clearly violative of Rule 11(b)(1) and (2) as having to address the allegation by the defendants and the court needlessly increased the cost of litigation since the allegation is not supported in fact or law. However, the plaintiff conceded the inapplicability of the Fifth Amendment in brief and replied that it was "an iteration - however inartfully stated - that she was seeking to recover for her deprivation of procedural due process under the Fourteenth Amendment." [Rec. Doc. 19, p. 24]. Accordingly, while the Court finds her claim to lack legal or factual foundation, it is not recommended that sanctions be imposed only for the Fifth Amendment claim given this explanation. However, as set forth below, this violation forms a cumulative part of the conduct warranting the sanction ultimately recommended.

-10-

The Court found that Plaintiff's Fourteenth Amendment claim for violation of her substantive due process rights failed for lack of any factual allegations whatsoever, or citation to any state law, policy or custom that would indicate she had a basis for a claim of entitlement to a specific shift or duties, i.e. a factual or legal basis to establish a property interest necessary to bring a substantive due process claim. Her procedural due process claim was dismissed because it lacked any factual support whatsoever that the appeal process to which she availed herself was inadequate, not meaningful or otherwise was unconstitutional.

The plaintiff's claim under §1983 based on violations of the Equal Protection clause due to retaliation was dismissed because, under existing jurisprudence - albeit with no controlling Fifth Circuit jurisprudence - as a matter of law, no *retaliation* claim may be brought under §1983 based on the Equal Protection Clause. [Rec. Doc. 31, p.p. 15-16]. Therefore, the Court looked to determine whether she stated a claim for violation of the Equal Protection Clause based on discrimination.  It is well-settled that the evidentiary framework of a Title VII case is utilized to determine whether a defendant has intentionally discriminated against the plaintiff. *Lawrence v. University of Texas Medical Branch at Galveston,* 163 F.3d 309, 311 (5th Cir. 1999). Thus, the plaintiff must provide direct evidence of discrimination or satisfy the steps of *McDonnell*

*Douglas Corporation v. Green,* 411 U.S. 792, 802-805 (1973) to allege a circumstantial case for intentional discrimination.

The plaintiff did not allege any direct evidence of discrimination. Further, she did not allege that she was a member of a protected class, nor did she allege any facts supporting any disparate treatment or the identification of other similarly-situated individuals who had been treated more favorably. Therefore, the plaintiff failed to allege a *prima facie* case of discrimination under the Equal Protection Clause and  it was recommended that all possible claims made under the Fourteenth Amendment be dismissed. [Rec. Doc. 31, pp. 15-18]. The plaintiff similarly failed to assert a prima facie case of discrimination under Title VII. [Rec. Doc. 31, p. 38].

While the Court did find that the plaintiff alleged a potential First Amendment retaliation claim, the defendants and the Court nonetheless had to go through the numerous allegations against the various individuals for which there was no factual basis to support a First Amendment retaliation claim. [Rec. Doc. 31, pp. 27- 34]. This included individual capacity claims against  Chief Administrative Officer Dee Stanley, Police Chief Jim Kraft, Ray Domingue, George "Jackie" Alfred, Captain Cornell Montgomery, Terry Head, Richard

"Ricky" Rees, and Sergeant Mike Brown.[4] The analysis resulted in dismissal of all of the individual capacity claims except for those against Chief Craft, Sergeant Brown and Captain Montgomery. One of these defendants, Lieutenant Rees, was deceased and the claim against him was clearly frivolous.

Without repeating all of the analysis found in pages 26-34 of the Report and Recommendation [ Rec. Doc. 31], the Court finds the individual capacity allegations against these individuals who were dismissed were violative of Rule 11(b)(1) and (2).

In addition to the foregoing, the Court found (1) the plaintiff's claims against the individual defendants named in their official capacities were redundant since the Lafayette City-Parish Consolidated Government was named as a defendant; (2) the Lafayette City Police Department was not an entity which had the legal capacity to be sued; (3) there is no basis for punitive damages against a municipal defendant;  (4) the alleged state law claims were barred by the exclusivity provisions of the Louisiana Worker's Compensation Act; (5) there was no factual or legal basis to support the claim brought under the Louisiana Whistleblower Statute (La.R.S. 23:967); and (6) there was no basis for the claims

---

[4]The Court could not readily discern if an individual capacity claim had actually been asserted against Mayor Durel and therefore had to address that possible allegation as well.

brought under the Louisiana Employment Law (La. R.S. 23:301) for the same reason there were no claims under Title VII.

At the time this suit was filed, there was no factual or legal support for the claims that were dismissed except two or possibly three and the handling of these baseless allegations caused unnecessary delay and needlessly increased the cost of litigation, therefore, the Court finds the claims were brought in violation of Rule 11(b)(1) and (2).

Having found that a Rule 11 violation has occurred, the next determination is what sanctions would be "the least severe sanction that furthers the purposes of Rule 11 and is the least severe sanction adequate to such purpose. . .[yet] 'sufficient to deter repetition of [similar] conduct.'" *Jenkins v. Methodist Hospital of Dallas, Inc.*, 478 F.3d at 265 (quoting *Thomas v. Capital Security Services, Inc.* 836 F.2d at 878 and Fed.R.Civ.P. 11(c)(2) now Rule 11(c)(4)).

According to the Advisory Committee Note,  the Court has discretion to (1) strike the offending paper;  (2) issue an admonition, reprimand or censure; (3) require the attorney to participate in seminars or educational programs; (4) impose a fine payable to the court; (5) refer the matter to disciplinary authorities; and (6) award attorneys' fees and/or expenses to the opposing side.  Fed.R.Civ.P. 11 Advisory Committee's Note, 146 F.R.D. 583, 587–88 (1993); see also *Thomas v.*

*Capital Services, Inc.,* 836 F2d at 877-78*; Traina v. United States,* 911 F.2d 1155, 1158 (5ᵗʰ Cir. 1990); *Bullard v. Chrysler Corp.,* 925 F.Supp 1180, 1190 (E.D.Tx. 1996).

The Advisory Committee Note also indicates the court may consider "whether the improper conduct was willful or negligent;  whether it was part of a pattern of activity or an isolated event;  whether it infected the entire pleading, or only one particular count or defense; whether the person has engaged in similar conduct in other litigation; whether it was intended to injure; what effect it had on the litigation process in terms of time and expense; whether the responsible person was trained in the law; what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; [and] what amount is needed to deter similar activity by other litigants." *Id*.; *Bullard v. Chrysler Corp.,* 925 F.Supp at 1190.

According to the Supreme Court, "the central purpose of Rule 11 is to deter baseless filings in district court and thus, . . .streamline the administration and procedure of the federal courts."  *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393 (1990). The Advisory Committee Note states "[t]he rule continues to require litigants to 'stop and think' before initially making legal or factual contentions. It also, however, emphasizes the duty of candor by subjecting litigants to potential

-15-

sanctions for insisting upon a position after it is no longer tenable . . ."

Fed.R.Civ.P. 11 *Advisory Committee Note,* 146 F.R.D. 583, 584-85 (1993).

As pointed out in this Court's first Report and Recommendation in this case at page 49, months before this suit was filed in October of 2013, this Court allowed these same attorneys the opportunity to amend a similar suit that suffered from many of the same defects. After this suit was filed, this Court submitted a Report and Recommendation in the *Marceaux* proceeding recommending sanctions under Rule 11 in the form of a reprimand, admonishment, fine and attorney's fees all of which were affirmed (and increased in the case of attorney's fees) by the district court and which have now been affirmed by the Court of Appeals.[5]  In that report, this Court noted similar issues with these same attorneys in other districts in this state where they have made similar allegations that the defendants, including entities which cannot be sued under § 1983, violated multiple amendments to the Constitution with no factual support for those contentions requiring motions to dismiss to be brought under Fed.R.Civ.P.

---

[5] *Marceaux v. Lafayette City-Parish Consolidated Government,* 6:12-cv-1532 Rec. Docs. 78, 84, 130 and 138.

-16-

12(b)(6).[6]  Thus, the offending allegations in this case are not a single isolated event.

What this Court finds most troubling is that the opposition to the Rule 11 motion in this case, filed long after the Report and Recommendation in *Marceaux,* shows no regard for or acknowledgment of the reprimand or admonishment. Moreover, even though Plaintiff's counsel were willing to submit the Rule 11 motion on the briefs that had been filed, they were nevertheless afforded the opportunity for an evidentiary hearing, to include additional briefing, long after the  *Marceaux* judgment had been signed by the district court. Not only did the attorneys for the plaintiff offer no acknowledgment that perhaps what they had done (and have been doing elsewhere) violated Rule 11, but they based their enitre opposition  on a time-line to seemingly excuse their behavior while the proceedings in *Marceaux* were pending. On the hearing date, which had been re-scheduled once before,  Mr. Alexander chose not to appear or participate at all. This level of this Court's frustration at the hearing was evident in the expression

---

[6]      *Andel v. City of Mandeville,* 2013 WL 5350609 (E.D.La. 2013); *McLin v. Ard,* 2013 WL 5798989 (M.D.La. 2013); *Patin v. Bellard,* 6:10-cv-650 (Rec. Doc. 1, 24); *Day et al v. Children & Family Services, et al,* 2:12-cv-2844 (Rec. Doc. 1, 8); *Beary v. State of Louisiana,* 3:04-cv-348, Rec. Docs. 1, 29, 39); *Wilfong et al v. State of Louisiana Board of Ethics, et al,* 3:11-cv-0128 (Rec. Docs. 1-1, 5, 23, 25).

from the bench that it could not be determined whether counsel did not really know what they were doing or just did not care.

Inasmuch as reprimands, admonishments, fines and awards of attorney's fees seem to have served as no deterrent, in the spirit of imposing the least severe sanction to further the purpose of Rule 11, this Court recommends as a sanction that both attorneys be required to complete 15 hours of Continuing Legal Education dedicated solely to Civil Rights or §1983 Litigation, and 6 hours dedicated solely to courses dealing with an attorney's obligations to counsel and the court under Rule 11. This continuing education requirement is to be completed *in addition to the hours required or already completed* to comply with counsel's obligations under Rule XXX of the Louisiana Supreme Court Rules applicable to Continuing Legal Education. Counsel are to provide to the court a certificate of completion no later than the close of the 2016 calendar year.

### *28 U.S.C. § 1927:*

Sanctions may be awarded under 28 U.S.C. § 1927, at the discretion of the trial court, when an attorney "so multiplies the proceedings in any case unreasonably and vexatiously" by requiring him to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *Gonzalez v. Fresenius Medical Care North America*, 689 F.3d 470, 479 (5th Cir.

-18-

2012); *Cambridge Toxicology Group, Inc. v. Exnicios*, 495 F.3d 169, 180 (5th Cir. 2007).  Awards under §1927 are penal in nature, and this statute must be strictly construed. *Browning v. Kramer*, 931 F.2d 340, 344 (5th Cir. 1991); *Travelers Insurance Co. v. St. Jude Hospital of Kenner, La., Inc*., 38 F.3d 1414, 1416 (5th Cir. 1994).

An attorney's actions are unreasonable, for purposes of §1927 when he has failed to comply with an objective standard of reasonableness under the circumstances. *Trinity Gas Corp. v. City Bank & Trust Co. of Natchitoches*, No. 01-11295, 2002 WL 31730186, at *1 (5th Cir. Nov. 19, 2002), citing *Federal Deposit Insurance Corp. v. Calhoun*, 34 F.3d 1291, 1296 (5th Cir. 1994).  An attorney's action is vexatious when it is undertaken primarily for the purpose of harassment or in order to annoy or embarrass. *United States ex rel. Rafizadeh v. Continental Common, Inc*., 553 F.3d 869, 875 (5th Cir. 2008).  Vexation implies something broader than bad faith or intent to harass.  To "vex" is defined among other things as "to bring trouble or distress to," "to subject to mental suffering," or "to irritate or annoy," as well as "to tease or torment." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE 2548(1981) (cited in *Ratliff v. Stewart*, 508 F.3d 225, 235 n. 13 (5th Cir. 2007).

Unlike Rule 11's objective standard, § 1927 requires the additional showing

of bad faith, improper motive, or a reckless disregard for the duty owed to the

court. *Gonzalez v. Fresenius*, 689 F.3d at 479-480; *Edwards v. General  Motors

Corp.*, 153 F.3d 242, 246 (5th Cir. 1998).  Any "reckless disregard of the duty

owed to the court" can suffice to establish an "improper purpose." *Id.,*  Once the

vexatiousness requirement is met, at the point when an "improper purpose" could

be inferred, all fees thereafter become recoverable.  *Ratliff*, 508 F.3d 225 at 235.

Particularly when a case is complex and the court imposes large sanctions,

the court must make detailed factual findings, (1) identifying the sanctionable

conduct and distinguishing it from the reasons for deciding the case on the merits,

(2) linking the sanctionable conduct to the size of the sanctions, and (3)

differentiating between sanctions awarded under different statutes. *Procter &

Gamble Co. v. Amway*, 280 F.3d at 526; *Cambridge Toxicology Group, Inc. v.

Exnicios*, 495 F.3d at 180-181.

Previously, this Court did not find the defendants were entitled to attorneys'

fees under § 1988 because it could not differentiate which of the defendants' fees

were allocated to defending frivolous vs. non-frivolous claims under the standard

of *Fox v. Rice, supra.* Although this Court is specifically not willing to find that

the actions of Plaintiff's counsel were reasonable or not vexatious, the inability to

differentiate where fees were incurred  has not changed. Therefore, the Court recommends that the motion for attorneys' fees under § 1927 be denied.

### *Conclusions and Recommendations*

Based on the foregoing, this Court finds that counsel for the plaintiff have violated Rule 11(b)(1) and (2) and that sanctions are justified. This Court concludes and therefore recommends that the least severe sanction for the conduct engaged in that could be imposed is that plaintiff's counsel complete 15 hours of continuing legal education dedicated solely to civil rights or § 1983 litigation, and 6 hours dedicated solely to counsel's obligation to the court and opposing counsel under Rule 11. This continuing education obligation is in addition to any hours required by or already completed in order to comply with Louisiana Supreme Court Rule XXX. The requirements should be completed no later than the close of calendar year 2016 with a certificate to be presented to the Court demonstrating completion of the required course work.

The Court, while not willing to find the actions of plaintiff's counsel were reasonable or not vexatious, nonetheless recommends that the motion for sanctions under 28 U.S.C. § 1927 be denied as this Court is incapable of determining which of the defendants' attorneys' fees were dedicated to defending frivolous claims and which were incurred defending non-frivolous claims.

-21-

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.  See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana this 30th  day of June, 2015.

_____

Patrick J. Hanna
United States Magistrate Judge

COPY SENT:

DATE:    6/30/2015
BY:            EFA
TO:            RFD

cg

-22-